Allegheny County Firefighters, Local 1038, International Association of Firefighters *v.* Allegheny County.

Argued November 1, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph J. Pass, Jr.,* with him *Jubelirer, McKay, Pass & Intrieri,* for appellant.

*Thomas H. M. Hough,* Special Labor Counsel and Assistant County Solicitor, with him *Francis A. Barry,* County Solicitor, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, January 11, 1973:

Two issues requiring further interpretation of the Act of June 24, 1968, P. L.      (Act No. 111), 43 P.S. §217.1 et seq., are raised in this appeal.

Pursuant to this Act, collective bargaining was initiated between the firemen of Allegheny County through their representative and the County; this produced an impasse. As provided by the Act, the parties then entered into a binding arbitration procedure which resulted in a majority of the arbitrators making an award containing, among other subjects, a written grievance and a union security provision. The County refused to implement these two provisions which pro-

duced mandamus and declaratory judgment actions to force the County to comply. The County filed preliminary objections in each case asserting these two provisions of the award to be beyond the authority of an arbitration board and, therefore, not binding upon the County. The lower court agreed and dismissed the complaints. This appeal followed.

This Act extends to policemen and firemen throughout the Commonwealth the right to bargain collectively with their government employer. It implements Article III, Section 31, of the Pennsylvania Constitution of 1968, which generally prohibits the delegation of legislative power. The 1967 amendment, however, further provides: "Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings." Section 7 of the Act of June 24, 1968, 43 P.S. §217.7, contains substantially identical language.

Thus, all political subdivisions of the Commonwealth are constitutionally and statutorily mandated to put into effect, to the extent possible under their delegated authority, an award of an arbitration panel. "As long as a political subdivision may legally perform a duty mandated by such award, it must perform such duty."

*Tate v. Antosh,* 3 Pa. Commonwealth Ct. 144, 153, 281 A. 2d 192, 198 (1971). "In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels . . . such panels may not mandate that a governing body carry out an illegal act. We reach this result by quite frankly reading into the enabling legislation the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so." *Washington Arbitration Case,* 436 Pa. 168, 176-77, 259 A. 2d 437, 442 (1969).

In *Washington,* it was held under the laws governing third class cities that such cities are without authority to pay hospitalization insurance premiums for families of city employees, hence such a provision in an arbitration award was unenforceable.

Applying *Antosh* and *Washington* to the instant appeal, we must first determine whether either or both

of the disputed provisions of the award would require the County to perform any duty or take some action which is impliedly or specifically prohibited by the statutory law governing its affairs. We shall consider them individually. The union security provision of the award states:

"(a)  All Fire Fighters subject to the terms of these findings (whether or not included in a formal Agreement between the parties) shall, within thirty (30) days of the date of this Award or the date of their employment whichever occurs last, become and remain members of the Union, or attain and retain good-dues-standing in the Union, *as a condition of continued employment.* (Emphasis added.)

"(b)  The Union shall accept into membership, or into good-dues-standing, each Fire Fighter subject to the terms of these findings, who tenders to the Union the monthly membership dues uniformly applied to all Union members in the bargaining unit, and the uniformly applied initiation fee required of all new members in the unit."

While this provision neither compels union membership nor dues check-off by the County, it does clearly provide that either union membership or retention of good-dues-standing is required of all firemen "as a condition of continued employment." It thus contemplates the discharge from county employment of any fireman who is not in good-dues-standing with a union to which he may or may not belong. By so providing it is in direct conflict with statutory law governing the discharge of firemen by second class counties. The Act of July 28, 1953, P. L. 723, as amended, 16 P.S. §3101 et seq., affords civil service protection to such employees and prohibits their discharge except for certain stated reasons none of which relate to union security. To comply with this provision of the disputed award, the County would be required to discharge a

fireman contrary to the statutory law governing discharge of firemen. By arbitration procedure under the Act, a local government cannot agree or be required to perform an illegal act. This provision is clearly within the interdiction of *Washington.*

The second provision of the arbitration award which is in dispute establishes what is commonly referred to as a four-step grievance procedure. Upon failure of the parties to agree through the first three steps the dispute is finally resolved by compulsory binding arbitration. The critical paragraphs of this provision state:

"Grievances are defined as any alleged violation of the terms of any recorded understandings between the parties (including the findings set forth in this Award), or differences of opinion as to the interpretation, meaning and application of such terms, and filed in accordance with the provisions of the Grievance Procedure, as hereinafter set forth. Grievances, as defined herein, shall be settled promptly through the following procedure.

. . .

"None of the above shall be construed to limit any of the rights which an individual Fire Fighter has pursuant to any CIVIL SERVICE ACT. Such rights under any CIVIL SERVICE ACT shall be in addition to the rights stated above."

Appellee has pointed to no specific statute governing second class counties, nor have we found any, which directly conflicts with this provision establishing grievance procedures, particularly since it recognizes and subordinates itself to rights afforded to firemen by applicable civil service statutes. It also may be safely assumed that disputes may arise between the County and its firemen concerning the terms and conditions of their employment as set forth in "any recorded understanding" which are not within the scope of the subject matter of applicable civil service statutes. As

to this provision, therefore, we are not faced with an obvious conflict but rather with a question of statutory construction.

In providing for collective bargaining concerning "terms and conditions of employment" and binding arbitration of issues in dispute, does Act No. 111 contemplate a grievance procedure as a proper subject of collective bargaining and, if so, can it also be said to contemplate an arbitration award after an impasse which not only provides for a grievance procedure, but also mandates binding arbitration of any dispute not otherwise resolved by the first three steps of such grievance procedure?

Pointing to the widespread use of grievance procedures in collective bargaining contracts between employers and employees in the private sector and their salutory effect in preserving peaceful labor relations, appellant contends that a grievance procedure for settlement of currently unidentifiable disputes is a proper subject of collective bargaining under Act No. 111, as it may be reasonably inferred to be within the meaning of "terms and conditions of employment" as contained in the statute. In advancing this argument appellant relies upon statutes, Federal and State, applicable to labor relations in the private sector which have been so construed.

Mindful of the admonition of the Supreme Court in *Washington, supra,* that legitimate issues in the context of a private sector labor dispute may not be legitimate in the context of a public sector labor dispute because public employees are in many respects more limited in what they may do vis-a-vis their employees, the lower court in this case concluded that the Act cannot be construed to include a grievance procedure for settlement of currently unidentifiable disputes as a proper subject for collective bargaining "concerning terms and conditions of employment." The grievance

procedure in the arbitration award in question was thus held to be beyond the authority of the arbitrators to make. In reaching this conclusion the lower court relied in part upon a comparison of provisions of Act No. 111 and the more recently enacted Public Employe Relations Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101, which specifically includes union security and a grievance procedure as proper subjects of collective bargaining, thus indicating a contrary legislative intent with respect to Act No. 111.

We agree with the conclusion reached by the lower court. We would add that assuming some form of grievance procedure might properly be the subject of collective bargaining under Act No. 111, a grievance procedure such as the one here in question which provides for ultimate binding arbitration of disputes unresolved by prior steps in the procedure is a clear second delegation of authority to a non-governmental body by the first non-governmental authority (the original arbitration panel) whose authority to perform a governmental act is recognized as an exception to non-delegation by the limited provisions of Article III, Section 31, of our present Constitution. Such a second delegation poses a serious constitutional issue which has not been raised and which we do not now decide.

Finally, we would note that the grievance procedure awarded by the arbitrators here defines a grievance to be any alleged violation of the terms of any "recorded understandings" or differences of opinion as to the meaning and application of such terms. Except for the terms and conditions of the arbitration award in question, the record is silent as to what "recorded understandings" are within the scope of the prescribed grievance procedure. A recorded understanding not having been the subject of necessary executive or legislative action (or both, as the case may be) by appropriate county officials cannot be considered as binding upon

the County for want of compliance with statutory law governing its affairs. Any such "recorded understandings" cannot be legitimatized simply by an arbitration award subjecting them to grievance procedures. The vagueness of what constitutes "recorded understandings" and the potential for affording apparent legitimacy to them through the imprimatur of statutorily sanctioned collective bargaining are additional reasons for striking down this particular award.

The order of the lower court is affirmed.