Russell STRUNK and Dean Moore, Individually and as officers, Agents, and Representatives of a Class Consisting of the Membership of the International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 753, Plaintiffs–Appellants,

v.

Joseph L. HAHN, Rebecca G. James, Patsy Northcutt, Nancy Fox, Rose Gambon, Barbara Johnson, Sharon Sue Truitt, and Fran Albright, Defendants–Respondents.

No. 16305.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 1990.

Motion for Rehearing or Transfer to
Supreme Court Denied
Sept. 18, 1990.

Application to Transfer Denied
Nov. 20, 1990.

---

**538**

Douglas W. Greene, III, Montgomery, Twibell, Upp & Greene, Springfield, James

G. Walsh, Jr., Jolley, Walsh, Hager & Gordon, Kansas City, for plaintiffs-appellants.

Donald W. Jones, Hulston, Jones & Sullivan, John C. Scully, Rossie D. Alston, Jr., National Right to Work Legal Defense Foundation, Springfield, for defendants-respondents.

SHRUM, Judge.

Appellant (hereafter Union)[1] brought this action against respondents seeking to recover from each respondent a monthly service charge[2] equal to the regular monthly dues of union members. Respondents are employees of a public body; namely, the Board of Public Utilities of the City of Springfield (herein called Board of Utilities). The Union is the certified bargaining representative of all Office Unit and all Physical Unit employees of the Board of Utilities. Respondents are not members of the Union but are employed in the two bargaining units represented by Local 753.[3] Summary judgment motions were filed by the Union and by respondents. The trial court sustained respondents' summary judgment motion, overruled the Union's summary judgment motion and pursuant to Rule 74.01(b)[4], ruled the judgment to be final and appealable. The Union appeals from that judgment. This court affirms.

█ No specific reason was assigned by the trial court for its decision.[5] In this court tried case, the primary concern of the appellate court is the correctness of the result that is reached. *Randel v. McClanahan*, 760 S.W.2d 607, 608 (Mo.App.1988). This court is to sustain the judgment if the result reached was correct on any tenable basis. *Broadstreets, Inc. v. Shippee*, 695

---

**1.** Appellant is an unincorporated labor organization, Local Union No. 753, International Brotherhood of Electrical Workers, AFL–CIO.

**2.** The terms "service charge," "service fee," and "agency fee" have been used interchangeably in appellants' pleadings and briefs, as well as in the parts of the Joint Statement of Intent before this court. This court will consider them one and the same as appellants have done.

**3.** The two bargaining units were the Physical Unit and the Office Unit.

**4.** References to rules and statutes are to Rules of Civil Procedure (20th ed.1989) and RSMo 1986, except where otherwise indicated.

**5.** The trial court's order reads, in part: "[T]he Court has found that the summary judgment motion filed by defendants should be sustained and the summary judgment motion filed by plaintiffs should be overruled.... IT IS HEREBY ORDERED ... Pursuant to Rule 74.04(b), the motions by defendants for summary judgment dismissing the petitions herein, is hereby sustained."

S.W.2d 521, 522 (Mo.App.1985); *David v. Shippy*, 684 S.W.2d 586, 587 (Mo.App. 1985).

■■■ Initially, the Union filed a lawsuit naming Pat C. Cepowski and Joseph L. Hahn as defendants in Greene County Circuit Court case number CV186–401–CC4.[6] A second lawsuit was filed and given case number CV186–750–CC2 naming employees in the Office Unit as defendants. The two cases were consolidated on December 11, 1986. A first amended petition filed May 11, 1987, contains a caption which continued to name Cepowski and Hahn as defendants.[7] A reading of the first amended petition reveals no allegations directed toward defendants Cepowski and Hahn. The prayer for relief in the first amended petition seeks no relief against them. As such, the petition fails to state a cause of action against Cepowski and Hahn. To commence a lawsuit (or to continue a lawsuit against parties initially named), requires the filing of a petition. Rule 55.01. While each averment of a pleading is to be simple, concise and direct with no technical forms of pleading being required, Rule 55.04, a pleading does have to contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled. Rule 55.05. In the record before this court, there is no petition or other pleading showing that the Union is entitled to relief as against Cepowski and Hahn. From all that appears in this record, the claims against Cepowski and Hahn were abandoned. Appellants' statement of facts asserts that respondents were employed in two bargaining units, although they were not members of the Union. The brief also sets forth parts of the "Joint Statement of Intent" for both bargaining units; namely, the Physical Unit and the Office Unit. The motion for summary judgment filed by the Union and

the supporting affidavits make no reference to Cepowski and Hahn. Accordingly, this court affirms the trial court's summary judgment in so far as it relates to any purported claim by plaintiffs against Cepowski and Hahn because, from the record before this court, there was no pleading showing the Union was entitled to relief and no demand for judgment for relief. Rule 55.05.

The law review comment[8] "[t]hat private sector [labor law] precedent is not automatically transferable to the public sector, and ... what is legal under Taft–Hartley in a General Motors plant is not necessarily legal under state public employee labor legislation in public institutions" is as true today as when the comment was made in 1971. The statutes granting bargaining rights, of a sort, to public employees have been noted as having a "long and tortuous history." *State ex rel. Bd. of Pub. Utilities v. Crow*, 592 S.W.2d 285, 289 (Mo.App. 1979). In *City of Springfield v. Clouse*, 356 Mo. 1239, 1252, 206 S.W.2d 539, 546 (banc 1947), the Missouri Supreme Court held that the City of Springfield could not make collective bargaining contracts covering wages, hours and working conditions with labor unions representing its employees. The court held that public employees had the constitutionally protected right to peaceably assemble and present their views to any public officer or legislative body concerning their pay and working conditions, but such rights were not to be confused with or equated to collective bargaining as that term is usually understood in the private sector. *See Sumpter v. City of Moberly*, 645 S.W.2d 359, 361 (Mo.banc 1982). Further development of the Public Sector Labor Law in Missouri occurred after the City of Springfield adopted its own charter on March 17, 1953, in accordance with the provisions of Mo. Const. art. VI, § 19 (1945).

---

**6.** As can best be determined from the record, the defendants named in CV186–401–CC4 were employees in the Physical Unit of the City Utilities department on February 24, 1986.

**7.** Also named as defendants in the amended petition were members of the Office Unit: Rebecca G. James, Patsy Northcutt, Nancy Fox, Rose Gambon, Barbara Johnson, Sharon Sue Truitt and Fran Albright.

**8.** Loevi, *The Development and Current Application of Missouri Public Sector Labor Law*, 36 Mo.L.Rev. 167, 169 (1971)

After that charter was adopted, a declaratory judgment was sought as to whether unions could enter into collective bargaining agreements with the Board of Utilities relating to wages, hours and working conditions of the Board of Utilities' employees. The Missouri Supreme Court in *Glidewell v. Hughey*, 314 S.W.2d 749, 756 (Mo.banc 1958), followed *Clouse*, saying:

> [Section] 29, Art. I, Constitution, does not confer any collective bargaining rights upon public officers or employees in their relations with municipal government.... [U]nder the present charter of the city the whole matter of qualifications, tenure, compensation and working conditions in the city's public utilities involves the exercise of legislative powers and cannot become a matter of bargaining and contract.[9]

The first Public Sector Labor Law was enacted in 1965 and substantially amended in 1967.[10] Early interpretation of the law concluded that:

> [T]his act does not purport to give to public employees the same rights to union activities as those enjoyed by employees in private industry....

*State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35, 42 (Mo.1969). In examining the history of Public Sector Labor Law in Missouri, a subtle but significant difference is noted between the 1965 legislation and the 1967 legislation. Section 105.520, RSMo 1965 Supp., read:

> Any public body may engage in *negotiations* relative to salaries and other conditions of employment of the public body employees, with labor organizations. Upon the completion of *negotiations* the results will be reduced to writing and presented to the governing or legislative body in the form of an ordinance or resolution for appropriate action. (Emphasis added.)

Thus, the 1965 legislation, in using the term "negotiations," used a term commonly used in the private sector of employer-labor relations.

The 1967 legislation seemed to take a step backward when it retreated from the word "negotiations" and, in lieu thereof, mandated that the "public body ... shall meet, confer and discuss such proposals relative to salaries and other conditions of employment...." Section 105.520 RSMo, 1967 Supp. Thus, the 1967 legislation (and indeed the legislation now in effect) goes no further than to codify constitutional rights; i.e., the constitutional right of all citizens, including public employees, to "peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body" as enunciated in *City of Springfield v. Clouse*, 356 Mo. at 1246, 206 S.W.2d at 542. *Curators*

---

9. This court can and does take judicial notice of the provisions of the City of Springfield home rule charter. *Pollard v. Board of Police Com'rs*, 665 S.W.2d 333, 341 (Mo.banc 1984); *Purdy v. Foreman*, 547 S.W.2d 889, 891 (Mo.App.1977). The pertinent provisions of the charter which were the subject of interpretation in *Glidewell v. Hughey, supra*, remained unchanged at the time the Union's alleged cause of action accrued in this case.

10. The parts of the Public Sector Labor Law pertinent are:

Section 105.510: "Employees ... of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a labor organization...."

Section 105.520: "Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative ... shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

*of Univ. of Mo. v. Public Serv. Emp. Loc. No. 45*, 520 S.W.2d 54, 58 (Mo.banc 1975);[11] *State ex rel. Missey v. City of Cabool, supra*, at 41.

Finally, in *Sumpter v. City of Moberly*, 645 S.W.2d 359,[12] the Missouri Supreme Court held that the City of Moberly was not authorized to enter into a binding collective bargaining agreement with a public employee labor organization and, thus, even after a city enacts an ordinance adopting the provisions of a memorandum of understanding with the union, the city could unilaterally change the ordinance (and hence the terms and conditions of employment) without prior union approval. "We hold only that this ordinance did not result in a collective bargaining contract which could be changed only with union approval." *Sumpter*, at 363 n. 4. *Sumpter v. City of Moberly* did not hold that the legislative action taken upon receipt of the written results of the discussions had no binding effect, but rather held that "[t]he ordinance, just as any city ordinance, governs and is binding until changed by appropriate action." *Sumpter*, at 363 n. 4.

 The foregoing review of the history of Public Sector Labor Law in Missouri is necessary, in part, because perusal of the record in this case shows that the following was not placed in evidence: (a) Joint Statement of Intent which both parties agree was the foundation of the Union's claim, and (b) any evidence that the Joint Statement of Intent was approved by the Board of Utilities by any type of legislative action. In their petition, the Union states that their cause of action is based upon a document entitled "Joint Statement of Intent" which includes an "agency shop"[13] clause which mandates the payment of service fees to the Union by respondents. From examination of the pleadings; admissions made in the briefs;[14] and uncontroverted facts found in the depositions, affidavits and exhibits filed in support of the motions for summary judgment, this court has been able to ascertain the pertinent terms of the Joint Statement of Intent.[15] However, given the peculiar nature of Public Sector Labor Law in Missouri,[16] as outlined above, it is essential that this court be able to determine and know from the record if the Joint Statement of Intent is the "writing" that resulted upon completion of discussion between the Board of Utilities and the Union. If it is only the written results of the discussions (even though admitted by respondents to have been signed by the Board of Utilities and

11. In *Curators, supra,* at 58, the Missouri Supreme Court said: "We believe the requirements of the Public Sector Labor Law ... merely provide a procedural vehicle for assertion by defendants of their constitutional rights to peaceably assemble and to petition for redress of grievances."

12. It should be noted that much of the "format" for tracing the history of Public Sector Labor Law was taken from *Sumpter v. City of Moberly.*

13. "Agency Shop" is defined as: "A union-security device whereby, in order to continue employment, any nonunion member employee is required to pay to the Union sums equivalent to those paid by union members, either in an amount equal to both union dues and initiation fees, or in an amount equal to dues alone." Black's Law Dictionary (5th ed.1979). As subsequently noted, at least one of the "Joint Statements of Intent" has language that is more akin to a "Maintenance of Membership" clause.

14. "Where a statement of facts is asserted in one party's brief and conceded to be true in his adversary's brief, the Court of Appeals may consider it as though it appeared in the record." *Smith v. Calvary Educ. Broadcasting,* 783 S.W.2d 533, 534 (Mo.App.1990); *Tittsworth v. Chaffin,* 741 S.W.2d 314, 315 (Mo.App.1987).

15. The "union security" provisions in the "Joint Statement of Intent" recited in the Union's brief or as made a part of affidavits are attached to this opinion as Appendix "A." Respondents concede the accuracy of the provisions in the Union's brief when, in their brief, they say: "A 'statement of intent' *as was entered into in this case* is merely the non-binding, non-enforceable agreement ... between the Union and the City Utilities." (Emphasis added.)

16. Section 105.520, RSMo 1986, provides, in part: "Upon the completion of discussions [between public body and labor organization], the results shall be reduced to writing *and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.*" (Emphasis added.)

Union),[17] it is not, as a matter of law, an instrument that can be used by the Union to collect service fees from the Board of Utilities' employees who are not members of the Union. This follows because § 105.520 does not authorize the Board of Utilities to enter into a collective bargaining contract. *Sumpter v. City of Moberly*, 645 S.W.2d at 363; *Curators of Univ. of Mo. v. Public Serv. Emp.*, 520 S.W.2d at 57; *State ex rel. Missey v. City of Cabool*, 441 S.W.2d at 41.

On the other hand, if the Joint Statement of Intent was the administrative rule, resolution or "other form" (as alluded to in *Sumpter v. City of Moberly, supra*, at 363) used by the Board of Utilities to adopt a proposal submitted to it by the negotiating team governing wages and working conditions for Board of Utilities' employees represented by the Union, then it must be determined if the union security language applies to the respondents. If that issue is decided in the affirmative, then the issue is squarely before this court as to whether or not union security arrangements for public sector employees are prohibited by § 105.510.[18]

Part of the record before this court is a supplemental brief of respondents in support of their motion for summary judgment. That supplemental brief asserts: "The basis of ... Plaintiff's suit ... is the statement of intent entered into between the ... Union and the City...." Respondents also filed affidavits to which they

attached parts of the Joint Statement of Intent in support of their claim that the language served to exempt those hired before November 1, 1982, from the service fees. Respondents' sworn affidavits attached to the supplemental brief stated:

The ... Union ... entered into a statement of intent with the City Utilities of Springfield for the Office Unit. *The effective dates of statement of intent are July 16, 1987 to July 16, 1990.* (Emphasis added)

■ The Union filed a brief in opposition to respondents' motion for summary judgment. Accompanying the Union's brief were affidavits of Russell Strunk and Dean Moore, Union business representatives. In those affidavits, they assert that the "Joint Statement of Intent ... was originally negotiated *and initiated* on or about November 1, 1982." Those assertions are not contradicted by counter affidavits or other evidence. Considering the provisions of § 105.520, such uncontroverted statement has significance. If the Joint Statement of Intent was only the written results of the negotiations prepared solely for presentation to the appropriate administrative body, the provisions thereof would not have been "initiated," even if signed by the Board of Utilities or members of its negotiating team. *Sumpter v. City of Moberly, supra*, at 363; *Curators of Univ. of Mo. v. Public Serv. Emp.*, 520 S.W.2d at 57; *State ex rel. Missey v. City of Cabool*, 441 S.W.2d at 41. From this, it is concluded that the Joint

---

**17.** Paragraph 5 of the Union's petition alleges: "That the legal document upon which this petition is based was entered into in Greene County...." Respondents' answer denies that allegation "in that there is no legal document upon which Plaintiffs' petition was based." Paragraph 6 alleges that the City and Union were "signatory to a Joint Statement of Intent, which was entered into with the express intent of defining the respective rights" of respondents. Respondents admit that Paragraph 6 of the Union's petition is true to the extent that the Union and City were signatories of a Joint Statement of Intent, but deny that the City and Union had power to define the conditions of employment with respect to payment of agency fee as a condition of employment with the City. In paragraph 11, the Union alleges: "Pursuant to the terms of the Joint Statement of Intent ... these defendants, as a condition of their contin-

ued employment with the utility [City], are compelled to pay to 'the Union' each month, either regular Union dues or a service charge equal to the regular monthly dues of Union members." In answer to paragraph 11, respondents: "[A]dmit that the Joint Statement of Intent purports to compel the Defendants to pay a service charge to the Union, but that provision of the Statement of Intent is null and void as a matter of law and deny that it has any legal effect."

**18.** Section 105.510 provides: "No such employee shall be discharged or discriminated against because of his exercise of such right [union representation, affiliation, etc.], *nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a labor organization...."*

Statement of Intent was the result of an administrative rule, ordinance, resolution or "something else" (per *Sumpter*) adopted by the appropriate administrative, legislative or other governing body of the Board of Utilities governing wages and working conditions (although not a collective bargaining agreement). It is likewise concluded that the legislative act of the Board of Utilities was not rescinded, amended or modified after its adoption. Accordingly, while the Joint Statement of Intent was not an enforceable contract because of the inability of the Board of Utilities to enter into a collective bargaining contract with the Union, it was an exercise of legislative authority which continued in effect until changed by appropriate action. *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 108 (Mo.App.1982).

This court here does not reach the issue of whether or not union security clauses are enforceable in Missouri against non-union public sector employees because the attempted union security clause in the Joint Statement of Intent does not apply to respondents. "Resolution of that issue should await a case in which a decision on it is essential to the adjudication on appeal." *Fowler v. Fowler*, 732 S.W.2d 235, 238 (Mo.App.1987) (Crow, C.J., concurring).

In determining that there was a tenable basis for the trial court's summary judgment for respondents, the following facts are significant. The seven respondents (all in the Office Unit) were hired before November 1, 1982. All joined the Union after November 1, 1982. The record is devoid of evidence as to when respondents ceased being union members, but it is clear from the record that they did terminate their union membership. In its brief, the Union claimed respondents stopped paying the "service charges" after the adoption of the Joint Statement of Intent in 1984. In the Union's pleading, the respondents are never referred to as union members but, rather, are referred to as members of the bargaining unit. The Union's petition seeks from each respondent "a service fee equal to the regular monthly dues of Union members (not including initiation fees, fines, assessments, or any other charges uniformly required as a condition of acquiring or retaining membership)." The Union stated in its motion for summary judgment that it had notified the respondents and requested payment of the "agency fee" (not union dues) before filing the lawsuit. As best as can be gleaned from the record, the Joint Statement of Intent relating to the Office Unit, upon which the Union bases its cause of action, had differing provisions depending upon the period involved. According to the Union's brief (and not contradicted by respondents), the following union security provision was in effect from July 15, 1984, to July 15, 1987 (see Appendix "A"):

> Any current Employee working in the classifications covered by this agreement may or may not become a member of the Union, however, *once an Employee becomes a member of the Union, said Employee shall remain a member. Any replacement Employee or any Employee hired after November 1, 1982, shall become a member of the Union or pay a service fee equal to the regular monthly dues of Union members....* (Emphasis added.)

By the clear and unequivocal terms of this Joint Statement of Intent (which was initiated by legislative action of the Board of Utilities), respondents were not obligated to pay service fees. They were hired before November 1, 1982. The Statement of Intent does not mandate that employees hired before November 1, 1982 (but who later became union members), had to pay service fees. The Joint Statement of Intent in effect from July 1984 to July 1987 was a "maintenance of membership" [19] clause, except that it made no provision for imposition of penalty on the em-

---

**19.** "Maintenance of membership" provisions require that once an employee voluntarily becomes a member of a union, he must maintain his membership for the duration of the contract as a condition of employment. There is no requirement, however, that an employee initially become a member. Yelin, *Constitutional Considerations Affecting the Methods of Exacting Union "Fair–Share" Collective Bargaining Fees From Non–Member Public Employees.* 1985 Det.C.L.Rev. 767, 769.

ployees who later chose not to maintain union membership; i.e., the respondents in this case. By its express terms, the Joint Statement of Intent imposed "service fees" on employees *"hired after November 1, 1982."* The Joint Statement of Intent did not impose service fees on those hired before November 1, 1982. Instead, the Joint Statement of Intent provided that if any Employee (which would include those who were hired before November 1, 1982) became a member of the Union, they "shall remain a member." What was to happen, according to the Joint Statement of Intent, as to those employees hired before November 1, 1982, who became union members but then left union membership; i.e., the respondents? Were they to pay a service charge or the agency fee to the Union? The answer is "no," because the Joint Statement of Intent for July 15, 1984, to July 15, 1987, is silent on that issue. It contains no provision requiring such employees to pay a service fee. The provision upon which the Union bottoms its cause of action clearly does not apply to the employees hired before November 1, 1982.

■■■ Were employees hired before November 1, 1982, who became union members but then left membership, to be fired when they ceased union membership?[20] The portions of the Joint Statement of Intent before this court (by admissions in the brief) do not contain provisions that require the Board of Utilities to discharge Office Unit employees who ceased being union members. The Joint Statement of Intent for the physical plant employees does provide for discharge of an employee in that bargaining unit if such employee does not join the Union or pay the service fee. (See Appendix "A," Paragraph III). Paragraph 11 of the Union's petition alleges that respondents' continued employment was dependent upon paying the service charge. There is no evidence in the record to support the allegation in paragraph 11 *unless* the Physical Unit Joint Statement of Intent was applied to Office Unit employees.

However, it would not aid the Union to make such claim. Article XVI of the home rule Charter of the City of Springfield is entitled "Board of Public Utilities." Section 16.7 of that Charter, entitled "Powers," provides:

> The said board of directors shall have all the powers necessary, desirable, or convenient to manage, control, and operate such public utilities, and by way of description but not of limitation, the board shall have the power to *hire such persons in the manner herein provided as are necessary to operate the said utilities....* (Emphasis added.)

In Section 16.14 of the Charter, the "manner" of hiring and discharging public utility employees was provided as follows:

> [A]ll other employees [other than the manager, his assistants and department heads] shall be hired, promoted, reduced *or discharged in accordance with rules established by the board designed to secure and retain employees strictly on the basis of merit....* (Emphasis added.)

The Charter provisions relating to Springfield's Board of Public Utilities, were exhaustively examined in *Glidewell v. Hughey,* 314 S.W.2d at 755:

> The Charter provision (16.14) is that "employees shall be hired, promoted, reduced or discharged in accordance with rules established by the Board designed to secure and retain employees strictly *on the basis of their merit and without regard to favoritism."* This is a delegation of legislative power by the Charter to the Board to set up a merit system of employment, separate from the merit system provided by the Charter (6.5, 6.6).... It is specified that this is to be done by "rules established by the Board" and the *Board has no authority to do it in any other way,* certainly not to contract away this authority. (Emphasis added)

**20.** In paragraph 11 of its pleading, the Union alleges that "Pursuant to the terms of the Joint Statement ... defendants, *as a condition of their continued employment with the utility,* are com-

pelled to pay to 'the Union' each month, either regular Union dues or a service charge equal to the regular monthly dues of Union members."

The merit system delegated to the Board of Public Utilities by Charter Provision 16.-14 is limited in scope. The Board is limited by Charter Provision 16.14 to promulgating rules regarding retention of employees "strictly on the basis of their merit." Attempts by the Board of Utilities at legislative action that provides for discharge of employees solely because such employees failed to pay a service fee to the Union is beyond the power delegated to the Board of Utilities by Chapter XVI of the Springfield Charter. Courts in other states have found union security agreements contrary to the "merit and fitness" clause of civil service laws. Thus, in *Allegheny Cty. Fire. Loc. 1038 v. County of Allegheny*, 7 Pa.Cmwlth. 81, 299 A.2d 60 (1973), a county government refused to implement a union security provision presented to it as a result of a "binding arbitration" proceeding. In determining that such binding arbitration provision could not be implemented by the county, the court said:

> While this provision neither compels union membership nor dues check-off by the County, it does clearly provide that either union membership or retention of good-dues-standing is required of all firemen "as a condition of continued employment." It thus contemplates the discharge from county employment of any fireman who is not in good-dues-standing with a union to which he may or may not belong. By so providing it is in direct conflict with statutory law governing the discharge of firemen by second class counties. The Act ... affords civil service protection to such employees and prohibits their discharge except for certain stated reasons none of which relate to union security. To comply with this provision of the disputed award, the County would be required to discharge a fireman contrary to the statutory law governing discharge of firemen. By arbitration procedure under the Act, a local government cannot agree or be required to perform an illegal act.

*Allegheny, supra*, 299 A.2d at 62.

In *Foltz v. City of Dayton*, 27 Ohio App.2d 35, 272 N.E.2d 169 (1970), the City of Dayton, an Ohio charter city, following union negotiations, changed its disciplinary rules so as to provide for discipline of an employee who was in a bargaining unit and failed to pay his monthly service charge. Section 10, Article XV of the Constitution of Ohio provided:

> Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to *merit and fitness....*

*Foltz, supra*, 272 N.E.2d at 172 (emphasis added). The court ruled that the City's civil service rule that allowed for discipline of an employee for not paying service fees to the Union was not a valid exercise of the city's powers of local self-government and that it did conflict with the Ohio constitutional provision concerning appointments of city employees based on merit and fitness.

It is the opinion of this court that Springfield Charter Provision 16.14 does not empower the Board of Utilities to adopt rules or "legislation" which penalizes employees in any fashion, either by demotion or discharge, for failure to remain union members or for failure of non-union employees to pay service fees. It is the further opinion of this court that for the period July 15, 1984, through July 16, 1987, respondents, who had been hired before November 1, 1982, had joined the Union after 1982, and had left the Union after July 15, 1984, were not obligated to pay service fees because the Joint Statement of Intent adopted by the Board of Utilities did not impose the fees on those employees.

Bearing in mind that the Joint Statement of Intent was the exercise of legislative authority which continued in effect until changed by appropriate action (*Sumpter v. City of Moberly, supra,* at 363; *Phipps v. School Dist. of Kansas City, supra,* at 108), the Board of Utilities did change the Office Unit Joint Statement of Intent. Effective July 16, 1987, and through July 16, 1990, the Joint Statement of Intent provided:

> Since the Union is the certified representative of all Employees in the Bargaining Unit and each Employee in the Bargaining Unit benefits equally from such representation without regard to whether he

is a member of the Union, it is fair that each Employee in the Bargaining Unit *hired after November 1, 1982, shall assume his fair share of the expense of such representation.* (Emphasis added.)

On its face, the last mentioned Joint Statement of Intent would seem to be in keeping with the 1984 Joint Statement of Intent in that neither imposed the service fee on employees hired before November 1, 1982. The Union filed affidavits in opposition to respondents' motion for summary judgment. Those affidavits state, in part:

> The new language referred to in defendants' most recent suggestions was negotiated on or about July 16, 1987. The bargaining intent of the Union and the Utility was to make the language in the new agreement commensurate with the language in the Joint Statement of Intent covering the Physical Unit.... [T]his new language was intended to cover only two employees, Barbara Marshall and John Miller, who are employees of the Utility employed in the Office and Clerical Unit. Both of these employees were employed prior to November 1, 1982, and had never become members of the Union. As a result, they are not required to pay an agency fee and the Union has never taken the position that they should be required to do so.... Therefore, in actuality, after the first Joint Statement of Intent was entered into, all of these defendants became members of the Union and agreed to adhere to, conform to, and abide by the constitution and laws of the International Brotherhood of Electrical Workers and its Local Unions. Therefore, it is the position of the Union that any position of these defendants that they are grandfathered out of the Joint Statement of Intent is not meritorious.

From the above, it is seen that the Union's position is that once respondents joined the Union, their union membership subjected them to the service fee provision. That argument is faulty for two reasons. First, it is clear from the Union's pleading and from its affidavits that its claim to recover service fees was confined to and was founded upon the Joint Statements of Intent. Indeed, it must be so, because once

the respondents ceased being union members they were no longer bound to abide by the Constitution of the International Brotherhood of Electrical Workers and its Local Unions. The Union is not attempting to collect union dues; it is not attempting to enforce its Constitution and bylaws. It is attempting to recover service fees based upon Joint Statements of Intent legislatively adopted by the Board of Utilities. Accordingly, the fact that respondents joined the Union or didn't join the Union has nothing to do with the Union's cause of action which is admittedly grounded on the Board of Utilities' legislative action.

■ The second reason why the Union's argument fails is that the Joint Statements of Intent (1984 version and 1987 version) are clearly written. The provisions are unambiguous. The unequivocal terms of those documents fail to impose service fees on employees hired before November 1, 1982. Whether they later joined the Union is of no moment. The Joint Statements of Intent were the legislative documents of the Board of Utilities and the first rule of statutory construction is to give effect to the intent of the legislative body. *State v. Burnau,* 642 S.W.2d 621, 623 (Mo.banc 1982). While it is proper to consider history of legislation where ambiguity exists, *Kieffer v. Kieffer,* 590 S.W.2d 915, 918 (Mo.banc 1979), this court finds no ambiguity here. *State ex rel. Mo. State Bd. v. Southworth,* 704 S.W.2d 219, 59 A.L.R.4th 915 (Mo.banc 1986). Words used in legislation must be accorded their plain and ordinary meaning. *State v. Burnau,* 642 S.W.2d at 623. The plain language of the Joint Statements of Intent exclude respondents from paying those fees because each of the respondents were hired by the Board of Utilities before November 1, 1982. Where the language of the legislation is plain and admits of but one meaning, there is no room for construction. *State ex rel. Mo. State Bd. v. Southworth, supra,* at 224. This Court must construe the Joint Statements of Intent as they stand, *England v. Eckley,* 330 S.W.2d 738, 744 (Mo. banc 1959), and give effect to them as written. *State v. Patton,* 308 S.W.2d 641,

644 (Mo.banc 1958). To engraft onto the Joint Statements of Intent language that "if employees hired before November 1, 1982, subsequently joined the Union, they shall pay service fees if they cease union membership but remain employed in the bargaining unit," would be to disregard the maxim of statutory construction that the legislative intent, insofar as possible, is to be determined from the language of the legislation itself. *State ex rel. Mo. State Bd. v. Southworth, supra,* 224–25; *State v. Sweeney,* 701 S.W.2d 420, 422–23 (Mo. banc 1985).

The judgment of the trial court is affirmed.

HOGAN, C.J., and FLANIGAN, P.J., concur.

## APPENDIX "A"

### I.

Effective July 15, 1984, to July 15, 1987, for the Office Unit

ARTICLE VII—UNION SECURITY—CHECKOFF

A. Any current Employee working in the classifications covered by this agreement may or may not become a member of the Union, however, once an Employee becomes a member of the Union, said Employee shall remain a member. Any replacement Employee or any Employee hired after November 1, 1982, shall become a member of the Union or pay a service fee equal to the regular monthly dues of Union members (not including initiation fees, fines, assessments or any other charges uniformly required as a condition of acquiring or retaining membership) after completing the six (6) month probationary period.

### II.

Effective July 16, 1987, to July 16, 1990, for the Office Unit

ARTICLE VIII—UNION SECURITY—CHECKOFF

Section 1. Since the Union is the certified representative of all Employees in the Bargaining Unit and each Employee in the Bargaining Unit benefits equally from such representation without regard to whether he is a member of the Union, it is fair that each Employee in the Bargaining Unit hired after November 1, 1982, shall assume his fair share of the expense of such representation.

### III.

Effective July 15, 1985, for the Physical Unit

ARTICLE VIII, §§ 1–3

Section 1. Since the Union is the certified representative of all employees in the bargaining unit and each employee in the bargaining unit benefits equally from such representation without regard to whether he is a member of the Union, it is fair that each employee in the bargaining unit assume his fair share of the expense of such representation.

Section 2. Employees are free to either join or not join the Union. All present regular, non-probationary employees who are not Union members but work in a bargaining unit represented by the Union shall, immediately following a 30–day period from the date hereof, as a condition of continued employment, pay to the Union each month, pursuant to authorization for payroll deduction therefor as hereinafter referred to, a service charge equal to the regular monthly dues (not including initiation fees, fines, assessments, or any other charges uniformly required as a condition of acquiring or retaining membership) paid to the Union by an employee in the same bargaining unit who is a Union member.

Section 3. All new employees who do not become Union members after completing six (6) continuous months of employment shall, as a condition of continued employment, pay to the Union each month commencing after said date, pursuant to authorization for payroll deduction therefor as hereinafter referred to, a service charge equal to only the regular monthly dues (not including initiation fees, fines, assessments or any other charges uniformly required as a condi-

tion of acquiring or retaining membership) paid to the Union by an employee in the same bargaining unit who is a Union member. Upon failure of any non-member employee to pay or tender the above mentioned service charge, the Utility will discharge such employee when requested to do so by the Union.

## ON MOTION FOR REHEARING OR TRANSFER

By motion for rehearing, or alternatively to transfer, the Union again vociferously argues that there is a compelling need to resolve the question of whether § 105.510, RSMo 1986, permits or precludes agency shop provisions as a lawful issue in public sector labor negotiations. This court agrees that resolution of that issue would be beneficial to public sector labor organizations and employers in the public sector. However, because the issue is important, and because meaningful guidance on the question is necessary, resolution thereof should be deferred until the issue has been squarely placed before an appellate court in a case where there is sufficient record made, and presented to the appellate court, to indicate that deciding such an important issue is essential to the resolution of the case. That is not the situation presented by this record. For example, the "joint statements of intent" for the "office unit" and "physical unit" employees were the writings upon which the Union based its cause of action in Count I and Count II;[1] yet, those state-

ments of intent were not a part of the record presented to the trial court nor to this court.[2] The joint statements of intent were not attached by the Union to its petition, nor to the motion for summary judgment, nor to the affidavits and other documents filed in support of its motion for summary judgment, nor were they attached to the instruments filed in opposition to the respondent's motion for summary judgment. With the evidence so limited, the trial court entered summary judgment in favor of the respondents and against the Union.[3] Significantly, the judgment in this case contained no declaration of the rights of the parties and did not include declarations in its judgment as is required if the pleadings state a cause of action for a declaratory judgment. *Zaiser v. Miller*, 656 S.W.2d 312, 315 (Mo.App.1983). In its brief filed with this court, the Union completely ignored the declaratory judgment count. For example, in its brief, the Union said:

> Subsequent to the enactment of these provisions ["joint statements of intent"], certain bargaining unit employees ... stopped paying the service charges (hereafter referred to as agency fees) required by the respective joint statements and Local 753 brought a *collection suit against them....* The Respondents defended on four grounds: that § 105.510, R.S.Mo, prohibits agency fees; that the joint statements of intent were not binding and enforceable with respect to the Respondents; that the agency fee agree-

---

**1.** Count I was a collection effort relying upon the "office unit" statement of intent. Count II sought a declaration of the rights of all non-union Board of Utility employees who worked in a bargaining unit represented by the Union.

**2.** The joint statement of intent for the office unit for the period July 16, 1987, through July 16, 1990, was attached to affidavits of certain respondents in support of their defense that the office unit statement of intent did not apply to them because they were hired before November 2, 1982; but that was the ONLY statement of intent contained in the record presented to the trial court as that record was revealed to this court by the legal file.

**3.** The trial court's order, in pertinent portion, read: "The Court has heard arguments on the motions for summary judgment filed by plain-

tiffs and defendants in these two cases which have been consolidated. Having duly considered all of the pleadings and affidavits, depositions and exhibits, the Court has found that the summary judgment motion filed by defendants should be sustained and the summary judgment motion filed by plaintiffs should be overruled.... NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND RULED AS FOLLOWS: 1. Pursuant to Rule 74.04(b), the motions by defendants for summary judgment dismissing the petitions herein, is hereby sustained. Pursuant to Rule 74.01(b), the Court further finds that there is no just reason for delaying the finality of said judgment and therefore said judgment shall be ... appealable...."

ments violated the Respondents' rights under the United States Constitution; *and that the agency fee requirements of the joint statements of intent did not apply to certain of the Respondents.*

\* \* \* \* \* \*

Although the *Circuit Court is not required to issue a detailed analysis*, the absence of any findings of fact and conclusions of law makes [sic] this case extremely difficult to brief. For example, while we find it hard to believe, we must assume that the Circuit Court ruled in Respondents' favor on all four points which Respondents raised in their motion for summary judgment. Accordingly, we must address them all in this brief. (Emphasis added).

There was sufficient substantial evidence to support the trial court's judgment based upon the office unit's defense that the joint statements of intent did not apply to them because they were hired before November 1982. The other issues did not have to be addressed in order to affirm the trial court's judgment. With regard to Count II, the record is barren of any objection, by the Union, directed to the trial court about the failure of the trial court to make a declaration of the rights of the parties and include such declarations in its judgment. Certainly no issue was presented or briefed by the Union on this appeal concerning the failure of the trial court to make findings and declarations in response to the request in Count II for a declaratory judgment. To the contrary, the Union said, on appeal, that it had brought a "collection suit" against respondents and that the trial court was not "required to issue a detailed analysis." Such pronouncements directly contradict any claim by the Union of a viable issue presented to this court concerning the

declaratory judgment count. Accordingly, this court could only assume that the parties and the trial court treated the issues in the declaratory judgment count as abandoned, or that the trial court's judgment amounted to a determination that Count II did not state a cause of action for declaratory judgment and the Union thereafter totally abandoned that issue. *Casper v. Hetlage,* 359 S.W.2d 781, 783 (Mo.1962).

Whatever the reason might be for the trial court's failure to make a declaration of the parties' rights, the Union did not present that failure as alleged error to the trial court. It is a fundamental rule that contentions not put before the trial court will not be considered by the appellate court; an appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Casper v. Hetlage, supra,* at 783; *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App. 1984). Where a declaratory judgment action is filed, if the pleadings state a cause of action, the trial court must make a declaration of the rights of the parties and include such declarations in its judgment. *Zaiser v. Miller, supra,* at 315. On appeal, the Union did not brief, or otherwise present, a complaint of error in the failure of the trial court to make a declaration of the rights of the parties. Accordingly, this court concludes, and remains convinced, that the Union's appeal on the declaratory judgment count was abandoned. *Estate of Huskey v. Monroe, supra,* at 208; *Komanetsky v. Missouri State Medical Association,* 516 S.W.2d 545, 549 (Mo.App.1974). "An appellant has a duty to furnish an adequate record by which allegations of error can be reviewed with some degree of confidence." *Daniels v. Griffin,* 769 S.W.2d 199, 200 (Mo.App.1989).[4]

---

**4.** This court clearly recognizes that when, as here, a declaratory judgment is sought and a trial court fails to make a declaration settling the rights (as when it dismisses a petition without a declaration), a reviewing court *may* make a declaration. *Nicolai v. City of St. Louis,* 762 S.W.2d 423, 426 (Mo.banc 1989). However, exercise of appellate court discretion to go forward with a declaration of rights in such case is normally confined to those instances where there are no disputed facts and the record clear-

ly indicates the issue is purely a legal one. *Nicolai v. City of St. Louis, supra,* at 426; *Magenheim v. Board of Education,* 347 S.W.2d 409 (Mo.App.1961). This court does not believe the record presented in this case is such that it should exercise its discretion to declare the rights of the parties. Deciding an issue as important as what the parties here perceive this issue to be, should be left to a case where the record clearly reflects that deciding the issue was necessary. In such instance, the decision is

Appellate review presupposes a record and evidence from which the appellate court can perform the review with some degree of confidence in the reasonableness, fairness and accuracy of the final decision. *Zaiser v. Miller, supra,* at 318. The record and evidence in this case was not sufficient to convince this court that it should decide the important issue of the lawfulness of agency fee provisions in public sector labor relations when the issues, as presented by the record, could be resolved without reaching such issue.

The following additional contention found in the motion for rehearing or transfer should be addressed for clarification:

> ... [T]hat portion of the Court's opinion dismissing Appellant's appeal as to Joseph Hahn is erroneous for the reason that Appellants have never abandoned their claim against Mr. Hahn.... Mr. Hahn's name plainly appears on the caption of the First Amended Petition and plainly appears throughout the pleadings in Case No. CV186–401CC1. Moreover, Count II of Plaintiff's First Amended Petition clearly seeks relief with regard to "all present regular, non-probationary employees ... who are not union members, but who work in a bargaining unit represented by said unions ..." Defendant Hahn is clearly addressed by this pleading, and Appellants' appeal with regard to him, and hence the physical unit, should not be abandoned for the reason

not open to being distinguished or criticized and can be clearly relied upon.

5. The only pleadings presented to this court were the Union's first amended petition, answer to first amended petition with affirmative defenses and counterclaim, motion of Union for summary judgment with affidavits. None of those pleadings refer to Hahn (other than in the caption). Affidavits filed in support and in opposition of the motions for summary judgment, which mentioned other defendants, never mentioned Hahn or offered facts regarding Hahn.

6. Hahn and Cepowski were not named as parties to the counterclaim filed by the defendants against the Union, whereas all the employees in the "Office Unit" (those against whom relief was sought in Count I) did file counterclaims against the plaintiff.

7. In the suggestions filed in support of the motion for rehearing or to transfer, the Union says:

that it is important for all units to be considered in the Court's Opinion for the reasons cited above.

Clearly, whether the Union intended to do so or not, it omitted any claim against Joseph Hahn in Count I. As contained in the legal file furnished this court, Hahn's name does not "appear[ ] throughout the pleadings in Case No. CV186–401CC1." [5] A copy of Count I of the first amended petition is attached as an appendix hereto.[6]

This court never considered Count II to apply to Hahn, and properly so. The Union clearly abandoned Count II as it related to Hahn and Cepowski.[7] Count II of the Union's petition is attached as a part of the appendix. The pleading recites:

> Come now the plaintiffs, as and for Count II of their cause of action against defendants *Rebecca G. James, Patsy Northcutt, Nancy Fox, Rose Gambon, Barbara Johnson, Sharon Sue Truitt and Fran Albright, and state to the court as follows:....* (Emphasis added.)

There then follows a paragraph incorporating the allegations of paragraphs 1–17 of Count I of the first amended petition (all of which relate to the employees of the office unit). Hahn was omitted as a party to Count II and by incorporating Count I into Count II without additional pleadings, only the "office unit" employees and the office unit "joint statement of intent" were included in Count II.

"During the passage of time during which this litigation has been pending, several of the affected employees have decided to pay their monthly service charges as requested by the Union, and, therefore, by stipulation, the lawsuit against these employees was dismissed and the issues with regard to them became moot." Later in that memorandum, the Union says, "Although ... Cepowski later recanted and decided to pay his monthly fees, Hahn remains a viable party to this lawsuit...." The record presented to this court simply does not support the Union's assertions. Nowhere in the docket sheets contained in the legal file is there an indication that any employee was dismissed from the lawsuit. Rather, the parties simply continued to carry the names Hahn and Cepowski on the caption of the pleadings but ceased making allegations in the body of the pleadings as against those two individuals.

The motions of the Union for rehearing or in the alternative for transfer to the Missouri Supreme Court are denied.

### APPENDIX

### IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI DIVISION 4

RUSSELL STRUNK and
DEAN MOORE,

Individually and as Officers, Agents, and Representatives of a Class Consisting of the Membership of the

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION NO. 753, Plaintiffs,

vs.

PAT C. CEPOWSKI and JOSEPH L. HAHN, Defendants.

and

RUSSELL STRUNK and
DEAN MOORE,

Individually and as Officers, Agents, and Representatives of a Class Consisting of the Membership of the

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION NO. 753, Plaintiffs,

vs.

REBECCA G. JAMES, PATSY NORTH-CUTT, NANCY FOX, ROSE GAMBON, BARBARA JOHNSON, SHARON SUE TRUITT and FRAN AL-BRIGHT, Defendants.

Case Nos. CV186–401–CC1,
CV186–750–CC2

May 11, 1987.

### FIRST AMENDED PETITION

### COUNT I—PETITION

Come now the plaintiffs, and for Count I of their First Amended Petition against defendants state to the court as follows:

1. Plaintiffs Russell Strunk and Dean Moore are officers and agents of the International Brotherhood of Electrical Work-ers, AFL–CIO, Local Union No. 753, and are residents of Greene County, Missouri.

2. The International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 753 (hereinafter "the Union") is an unincorporated labor organization with its headquarters located at 2902 East Division, Springfield, Greene County, Missouri, and is the certified bargaining representative of all employees of the City Utilities of Springfield, Missouri, employed in the "Office Unit" of said utility.

3. That the full membership of said class of said Union is numerous, and the names of each member, agent, and repre-sentative of said class cannot, without great delay and difficulty, be added as plaintiffs in this action, but that this action is brought by plaintiffs Strunk and Moore with the consent of the membership of said class, and for the benefit of said class, and that plaintiffs Strunk and Moore adequate-ly represent all of the members of said class.

4. That all defendants herein are resi-dents of Greene County, Missouri.

5. That the legal document upon which this petition is based was entered into in Greene County, Missouri.

6. That, at all times mentioned herein, Local Union No. 753, "the Union," and the City Utilities of Springfield, Missouri, were signatory to a Joint Statement of Intent, which was entered into with the express intent of defining the respective rights, duties, and obligations concerning wages, hours, rules, and other conditions of em-ployment, for certain employees of the City Utilities of Springfield, Missouri, employed in the unit of employees hereinafter re-ferred to as the "Office Unit," including defendants James, Northcutt, Fox, Gam-bon, Johnson, Truitt, and Albright.

7. That the aforesaid Joint Statement of Intent was in full force and effect at all times mentioned herein, and with respect to the Union, the utility, and all defendants herein, it does define their respective rights, duties, and obligations concerning wages, hours, rules, and other conditions of employment.

8. That with concern to the issues of wages, hours, rules, and other conditions of employment, defendants James, Northcutt, Fox, Gambon, Johnson, Truitt, and Albright do benefit from the aforesaid Joint Statement of Intent and as such, are third party beneficiaries of such statement.

9. That, regardless of whether or not these defendants are current members of "the Union" they benefit equally from the representation of "the Union" for collective bargaining purposes, and, pursuant to Article VII, Section A, of the Joint Statement of Intent, they are required to pay to the Union either Union dues or a service fee equal to the regular monthly dues of Union members (not including initiation fees, fines, assessments, or any other charges uniformly required as a condition of acquiring or retaining membership).

10. That defendants James, Northcutt, Fox, Gambon, Johnson, Truitt, and Albright are members of the appropriate bargaining unit of employees (the "Office Unit") to which "the Union" is the certified bargaining representative.

11. Pursuant to the terms of the Joint Statement of Intent, all bargaining unit employees, including these defendants, as a condition of their continued employment with the utility, are compelled to pay to "the Union" each month, either regular Union dues or a service charge equal to the regular monthly dues of Union members.

12. That the monthly service charge owed by defendant James to "the Union" is Three Hundred Eighty-one and 04/100 Dollars ($381.04).

13. That the monthly service charge owed by defendant Northcutt to "the Union" is Three Hundred Six and 40/100 Dollars ($306.40).

14. That the monthly service charge owed by defendant Fox to "the Union" is Two Hundred Fifty-one and 04/100 Dollars ($251.04).

15. That the monthly service charge owed by defendant Gambon to "the Union" is One Hundred Twenty-one and 24/100 Dollars ($121.24).

16. That the monthly service charge owed by defendant Johnson to "the Union" is Three Hundred Two and 43/100 Dollars ($302.43).

17. That the monthly service charge owed by defendant Truitt to "the Union" is Twenty and 81/100 Dollars ($20.81) per month from March, 1987, forward until settled.

18. That the monthly service charge owed by defendant Albright is Twenty-one and 45/100 Dollars ($21.45) per month from March, 1987, forward until settled.

19. That although "the Union" has repeatedly requested of defendants James, Northcutt, Fox, Gambon, Johnson, Truitt, and Albright that they pay the aforesaid arrearages, they have failed and refused to do so.

WHEREFORE, in this Count I of plaintiff's petition, plaintiffs respectfully request judgment against defendant Rebecca G. James in the amount of Three Hundred Eighty-one and 04/100 Dollars ($381.04); and against defendant Patsy Northcutt in the amount of Three Hundred Six and 40/100 Dollars ($306.40); and against Defendant Nancy Fox in the amount of Two Hundred Fifty-one and 04/100 Dollars ($251.04); and against defendant Rose Gambon in the amount of One Hundred Twenty-one and 24/100 Dollars ($121.24); and against Defendant Barbara Johnson in the amount of Three Hundred Two and 43/100 Dollars ($302.43); and against Sharon Sue Truitt in the amount of Twenty and 81/100 Dollars ($20.81) per month from March, 1987, forward until settled; and against Fran Albright in the amount of Twenty-one and 45/100 Dollars ($21.45) per month from March, 1987, forward until settled; and for such other amounts and arrearages as may come due in the future, as alleged in Count I of this First Amended Petition; for a reasonable attorney's fee and costs of this action; and for such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT II—DECLARATORY JUDGMENT

Come now the plaintiffs, as and for Count II of their cause of action against

defendants Rebecca G. James, Patsy Northcutt, Nancy Fox, Rose Gambon, Barbara Johnson, Sharon Sue Truitt, and Fran Albright, and state to the Court as follows:

1. That plaintiffs restate and reallege and incorporate herein by reference paragraphs 1 through 17 of Count I of their First Amended Petition as if realleged herein in haec verba.

2. That plaintiffs Moore and Strunk, as officers and agents of "the Union," as aforesaid, have fiduciary and good faith duty to fairly represent all of the members of the Local Union No. 753, and all of the employees of the City Utilities of Springfield, Missouri, employed in appropriate bargaining units represented by Local Union No. 753, and, as such, must insist on strict compliance of all terms, duties, and obligations contained in the Joint Statement of Intent referred to in Count I of plaintiffs' First Amended Petition.

3. The plaintiffs further allege that, by reason of the above and foregoing, it is necessary for the protection of the class consisting of the membership of "the Union" and of the appropriate bargaining unit employees of the City Utilities of Springfield, Missouri, that plaintiffs secure a declaratory judgment as to the existence or non-existence of the rights, powers, privileges, and immunities of the parties hereto, upon the facts alleged herein, and of the existence or non-existence of the facts upon which such rights, powers, privileges, and immunities now exist or will arise in the future.

WHEREFORE, the plaintiffs respectfully request that a declaratory judgment be issued by this Court ordering, adjudging, and decreeing that all present regular, non-probationary employees of the City Utilities of Springfield, Missouri, who are not Union members, but who work in a bargaining unit represented by said Union, shall, as a condition of their continued employment, pay to the said Union each month, a service charge equal to the regular monthly dues (not including initiation fees, fines, assessments, or other charges uniformly required as a condition of acquiring or retaining a membership) paid to the Union by an employee in the same bargaining unit who is a Union member; for reasonable attorney fees and costs and expenses of this litigation; and for such other and further declaratory judgment, order, or relief as may be just and proper.

/s/Douglas W. Greene, III
Douglas W. Greene, III

DOUGLAS W. GREENE, III

Missouri Bar No. 24373

805 Woodruff Building

PO Box 1322

Springfield, Missouri 65805

Attorney for Plaintiffs