**Fred J. ZAISER, et al.,**
**Plaintiffs-Appellants,**

v.

**George MILLER, et al.,**
**Defendants-Respondents.**

**Fred J. ZAISER, et al.,**
**Plaintiffs-Respondents,**

v.

**George MILLER, et al.,**
**Defendants-Appellants.**

**Nos. 12759, 12788.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 11, 1983.

Harold F. Glass, John G. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for plaintiffs-appellants.

R. Jack Garrett, R. David Ray, West Plains, for defendants-respondents.

GREENE, Chief Judge.

This case involves a dispute between two factions who were members of the St. Paul Evangelical Lutheran Church of West Plains, Missouri. A schism occurred because of differences of opinion on doctrinal matters. Plaintiffs and defendants, each representing a class, claimed the right to possession and control of the church property.

Plaintiffs brought suit. In Count I of their amended petition, plaintiffs asked for a declaratory judgment under Rule 87, V.A.M.R., requesting that the court declare they, and those parishioners they represented, had adhered to the faith, creed, doctrine and practices of the church, as such had existed prior to the division of the congregation, and that the individual defendants, and those they represented, had not. They also asked for a declaration that plaintiffs were entitled to the church property, subject to an equitable adjustment with respect to "the debt against the church property . . . ." Count II was a quiet title action in which plaintiffs requested a declaratory judgment that they were fee simple owners of the real estate on which the church had been built, subject to the security interest of the mortgage holder. Count III was an action to eject defendants, who were in possession of the church property.

In their counterclaim, defendants requested a declaration that the church property belonged to a corporation defendants had formed after the schism. The Missouri District of the Lutheran Church-Missouri Synod (Synod), named in plaintiffs' petition as a party-defendant so that any declaration of the rights of plaintiffs and defendants would be binding on all parties in interest, filed a Crossbill in Interpleader, stating that it held title to the real estate on which the church was built to secure payment of a note made by "St. Paul Lutheran Church", with a balance due on the note, as of October 3, 1980, being $24,643.03.

On June 2, 1981, the trial court ordered plaintiffs and defendants to each deposit the sum of $25,070.10 in the registry of the court, and ordered the Synod to deposit a warranty deed to the church property in question in the court registry. It further ordered the court clerk, after the warranty deed and money was deposited as ordered, to pay the Synod $25,070.10, at which time the Synod was to be discharged as a party. The court's minutes indicate that the money was deposited, the deed was received, $25,070.10 was disbursed to the Synod, and that the Synod was discharged as a party-defendant. The $25,070.10 figure mentioned in the court's order was the loan balance of $24,643.03, plus interest on that amount from October 3, 1980 until June 2, 1981.

The case was court-tried on July 21, 1981, and taken under advisement. On May 6, 1982, the trial court filed "Findings of Facts, Conclusions of Law, Order, Judgment and Decree." In that document, the trial court stated, as a purported complete judgment, "IT IS, THEREFORE, THE ORDER, JUDGMENT AND DECREE that the relief sought by the plaintiffs is denied and that the plaintiffs have and recover Twenty Two Thousand Five Hundred Dollars ($22,500.00) as their interest in St. Paul [referred to in the findings of fact as St. Paul Evangelical Lutheran Church] and that said award be a special lein [sic] on said property and that all other relief sought by the parties against each other is denied and the costs over and above the filing fee taxed equally against the parties."

Plaintiffs and defendants both appealed. Plaintiffs contend that the trial court erred, in its findings of fact and conclusions of law by concluding defendants were the owners of the church property because 1) under Missouri corporate and property law, the ownership of the church property passed to plaintiffs as the legal successors to St. Paul Evangelical Lutheran Church, 2) a quit claim deed dated July 20, 1981, purportedly conveying real estate from the St. Paul Evangelical Lutheran Church, a Missouri corporation, to St. Paul Lutheran Church, a Missouri corporation, and used by the trial court to support its conclusion that the defendants "are now the owners . . . of the . . . property" was erroneously admitted into evidence, 3) in not deferring to a "Ruling and Decision" of the Board of Appeals of the Synod that plaintiffs had adhered to the faith, creed, doctrine and established practices of the congregation as it existed prior to the division, while defendants' group had not, and 4) the award of $22,500 to plaintiffs' group was clearly erroneous and against the weight of the evidence, and if plaintiffs were not to receive the church property, the undisputed evidence showed they were entitled to at least $50,820.10.

In their appeal, defendants contend that the $22,500 awarded plaintiffs was not supported by substantial evidence.

■ In Counts I and II of plaintiffs' amended petition, and in defendants' counterclaim, the parties asked for declaratory judgments. In such circumstances, if the pleadings state a cause of action for a declaratory judgment, and they do here, the trial court must make a declaration of the rights of the parties, and include such declaration in its judgment. *State ex rel. Boyer v. Stussie,* 592 S.W.2d 269, 272 (Mo.App. 1979). Making such declarations in findings of fact or conclusions of law is not enough, as such findings and conclusions are not a judgment. *Wilhoit v. Wilhoit,* 599 S.W.2d 74, 78 (Mo.App.1980). The "judgment" in this case contains no such declaration, does not declare who has title to the real estate in question, does not determine the rights of the parties, and does not dispose of the issues raised by the pleadings.

Ordinarily, when a judgment entered by the trial court is insufficient, we remand for entry of a correct judgment, or enter such judgment as the trial court should have entered, based on the evidence before it and the law. Rule 84.14, V.A.M.R. Insurmountable difficulties prevent the application of either of those remedies in this case. In order to discuss those difficulties, a brief outline of the evidence received by the trial court is necessary.

Prior to 1924, there was no Lutheran church in West Plains. In that year, 29 people, including plaintiff Matilda Lindeman, formed a Lutheran congregation. They held services in the old Howell County Courthouse until 1928, when they built their first church. In that year, they incorporated under the name of The St. Paul Evangelical Lutheran Church. The duration of the corporation was for a period of 50 years. In 1941, the congregation became affiliated with the Synod. In 1969, a new church building was built on approximately four acres of land. Part of the construction cost was financed by a loan from the Synod, which took a deed to the property as security for its investment. The balance of the new church cost was paid from church funds.

In the late 1970's, a schism developed between members of the congregation. One group is represented here by plaintiffs and the other by defendants. The differences between the two groups involved theology and doctrine and the two groups' respective positions were:

| Plaintiffs' Group | Defendants' Group |
|---|---|
| (1) Opposes ordination of women. | (1) Favors ordination of women. |
| (2) Opposes women as church elders. | (2) Favors election of women as elders. |
| (3) Believes in the inerrancy of the scriptures. | (3) Does not believe in the inerrancy of the scriptures. |
| (4) Believes in communion with only those who practice beliefs identical with their own. | (4) Believes in open communion. |

The beliefs and doctrine espoused by plaintiffs' group were those advocated by con-

gregations who were affiliated with the Synod. The beliefs and doctrine advocated by defendants' group were those favored by congregations affiliated with the Association of Evangelical Lutheran Churches (A.E.L.C.).

The differences between the two groups were not resolved. In January of 1977, it was reported at a church board meeting, after a mail ballot, that 51 members of the congregation favored terminating the church's affiliation with the Synod and joining the A.E.L.C., while 22 favored remaining with the Synod. On February 14, 1977, a second vote was taken and those who favored the A.E.L.C. prevailed, 38 to 9. The vote was to withdraw the congregation's affiliation with the Synod, and to affiliate with the A.E.L.C.

On December 29, 1977, the majority, represented by defendants here, formed a new corporation under the name of St. Paul Lutheran Church, which corporation was established by pro forma decree. The Articles of Agreement recited that the purpose of the corporation was to promote the Christian religion, and to maintain the public ministry in accordance with the doctrines, faith and belief of The Lutheran Church, as set forth in the Declaration of Creed. The "Constitution and By-Laws", used by the congregation before the division, were revised in 1978 to reflect the beliefs of defendants' group. In addition to deleting all references to the Synod, the new constitution deleted all sections which 1) opposed the ordination of women, 2) opposed the right of women to be church elders, and 3) denied women the right to vote on church matters. The new bylaws reflected similar changes and also deleted sections of the old bylaws opposing open communion. On June 12, 1978, the charter of the original corporation, St. Paul Evangelical Lutheran Church, expired, by reason of the running of the 50-year limitation period contained in the pro forma decree under which it had existed.

The dispute continued and, on April 17, 1979, plaintiffs demanded that defendants surrender possession of the church property. When defendants refused to do so, plaintiffs brought suit in Howell County Circuit Court. On June 11, 1981, after suit was filed, in a "Ruling and Decision", the Board of Appeals of the Synod, a body constituted by the Synod for settling doctrinal disputes, ruled that the board had jurisdiction to resolve the dispute and stated "[w]e further hold that petitioners [plaintiffs] have indeed adhered to the faith, creed, doctrine, and established practices as members of St. Pauls as existed prior to the division of the congregation, and that the respondents [defendants] and those in their class have not adhered to the faith, creed, doctrine, and established practices." The ruling was by default, as defendants ignored the proceedings, contending that the Missouri Synod and its constituent bodies had no jurisdiction over them.

On July 20, 1981, the day before trial, a quit claim deed was purportedly executed by Harold Freeman, claiming to be acting as president of St. Paul Evangelical Lutheran Church, a Missouri corporation, conveying that corporation's interest in the church property to the St. Paul Lutheran Church, a Missouri corporation.

 A few examples of legal and evidentiary problems arising from the record in this case are as follows. Constitutional questions arising out of the First Amendment to the United States Constitution were raised by the pleadings, motions, attempts to introduce evidence, and in the briefs filed here. Where division of the church membership occurs, over differences of opinion as to what doctrines, creeds, and practices should be followed in the church's worship services and in the conduct of its meetings, resulting in conflicting claims of ownership of the church property because of such division, civil courts are called upon to decide which group is entitled to the ownership of the church property as a matter of law. Under Missouri law, the rule under which such decision is made has been that, in the event of a schism or division within a church, the right to possession and control of church property remains in that faction which adheres to the faith, doctrine

and established practices of the church as it existed prior to the division, regardless of whether that faction is the majority or the minority. However, for this rule to apply to congregational churches, where there is no ecclesiastical hierarchy or church judicatory body with the authority to settle doctrinal disputes, the rule has been that the will of the majority must show "real and substantial" departure from the essential theological doctrine of the church before the minority can prevail on the property ownership issue. *Lewis v. Wolfe*, 413 S.W.2d 314, 319 (Mo.App.1967); *Mills v. Yount*, 393 S.W.2d 96, 103 (Mo.App.1965); *Henson v. Payne*, 302 S.W.2d 44, 50 (Mo. App.1956). These cases were decided prior to 1969, when the United States Supreme Court, in Presbyterian Church in the *United States et al. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church et al.*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658, followed in 1979 by *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775, on a constitutional basis, articulated tests and methods that are constitutionally permissible to be applied by the state civil courts in order to resolve disputes such as are presented in this case. The findings, conclusions, and judgment here ignore the question of how, or if, Missouri case law in this area is affected by the federal decisions cited. This question must be addressed in respect to plaintiffs' claims and defendants' counterclaim, and the conclusions reached should be stated in the findings of fact and conclusions of law.

Another problem area concerns the findings of fact and conclusions of law made in this case. In its findings of fact, the trial court states that "[o]n December 29, 1977, the AELC Congregation and the St. Paul Lutheran Church [defendants' congregation and church corporation] became sucessors [sic] to the St. Paul Congregation and the St. Paul Evangelical Lutheran Church [plaintiffs' congregation and church corporation] . . . ." The statement "became successors" is a conclusion, not a fact, and we cannot tell from the record, or from the trial court's other findings, what evidence, if any, was the basis for such a conclusion.

We do know, from the record, that from December 29, 1977, the date of the decree incorporating defendants' church group, until June 12, 1978, the date of the dissolution of plaintiffs' corporation due to the running of the 50-year period provided in its charter, the two corporations were separate legal entities.

■ It is difficult for us to understand how, under these facts, the second corporation became successor to the first, merely from the fact that defendants' group chartered a second corporation on December 29, 1977. If this case can be decided on corporate law principles, there would have to be findings of fact, based on competent evidence, that prove the first corporation was the legal owner of the church property, and that the second corporation, through proper conveyance, or by operation of law, acquired those property rights from the first corporation. We are not saying that the successorship could, or could not, be found from proper facts in this case. What we are saying is the trial court's findings of fact do not justify such a conclusion.

■ Another problem area is the pronouncement by the trial court, in its findings of fact, that the A.E.L.C. congregation and The St. Paul Lutheran Church (defendant's group), "by a subsequent quit claim deed", are now owners of the real estate on which the church was built. That finding, which is really a conclusion, is not, as previously noted, reflected in the judgment that was entered. In addition to that problem, other problems in connection with the trial court's declaration on this issue are glaringly evident. The only quit claim deed in evidence is dated July 20, 1981, the day before the trial commenced. It purported to convey any and all interest in the real estate upon which the church was built from the St. Paul Evangelical Lutheran Church, a Missouri corporation, to St. Paul Lutheran Church, a Missouri corporation. The document was allegedly signed by Harold Freeman, as president of the St. Paul Evangelical Church corporation. Freeman did not testify at trial, and no one identified his signature. There was no evidence before the trial court that Freeman, at any

time, was ever the president, or acting president, of the corporation whose alleged property interest he was attempting to convey away. Plaintiffs' attorney strenuously objected to the introduction into evidence of the deed in question, contending that it had not been properly identified or authenticated, and that there was no proof that Freeman had been president of the corporation in question.

In our opinion, the objection was well-taken, and the deed was not admissible in evidence on the basis of the evidence before the trial court. Another factor bearing on the title issue is that the only evidence in the record showing who had legal title to the real estate in question prior to the filing of the lawsuit, is a warranty deed dated October 8, 1968, from Fred J. Zaiser and Doris E. Zaiser, his wife, to the Missouri District of the Lutheran Church—Missouri Synod. The record indicates that a deed was given to the Missouri Synod as security for its loan to provide funds for construction of the new church. We assume the Zaiser deed was that security instrument. The only other deed to the property in question in evidence was court-ordered in the Synod's interpleader action, and was from the Synod, with the grantee's name left blank.

There is nothing in the record to show that either of the rival church corporations ever had legal title to the real estate, and nothing in the record to show what happened to Mr. and Mrs. Zaiser's legal interest in the property. Under these circumstances, what legal effect the eleventh-hour quit claim deed referred to above would have, even if it had been properly identified, and if it had been shown that Freeman had the authority to execute it, is problematical. As to the money judgment for $22,500, there is nothing in the record to show where the trial court obtained such figure, and nothing in the record, or in the trial court's declarations, to show what is to become of the $25,070.10, plus interest, remaining in the registry of the trial court.

■ Appellate review presupposes a record and evidence from which we can perform that function with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion. Any judgment we might enter here would be based on sheer speculation, and would not be an informed opinion, based on relevant facts. *Phelps v. Watson-Stillman Company,* 365 Mo. 1124, 293 S.W.2d 429, 435 (1956).

■ We also note that the trial judge no longer holds office. We cannot require the successor judge to enter an after-the-fact judgment in a case where the record shows disputed facts and questionable evidentiary rulings by his predecessor. *Smith v. Smith,* 558 S.W.2d 785, 790 (Mo.App.1977).

The problems referred to above show beyond question that, in the interest of justice to all parties, the successor trial judge should have a clean slate with which to work. We sincerely hope before he is called upon to resolve the issues that the parties, in the spirit of Christianity, make a sincere effort to settle their differences, at least as to what equitable settlement should be made concerning the church's worldly goods.

The findings of fact, conclusions of law and judgment of the trial court are reversed, and ordered set aside, and the cause is remanded for a new trial.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.