Wesley B. JENNINGS, Plaintiff–
Appellant,

v.

CITY OF KANSAS CITY, Missouri, Kan-
sas City Municipal Assistance Corpora-
tion, Emanuel Cleaver,[1] Chuck Weber,
Sally Johnson, Michael Hernandez, Jim
Glover, Ronald Finley, Carol Coe, Ken
Bachus, D. Jeanne Robinson, George
Blackwood, Jr., and Judith Swope, De-
fendants–Respondents.

WD 43611.

Missouri Court of Appeals,
Western District.

May 7, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1991.

Application to Transfer Denied
Sept. 10, 1991.

---

1. The court has sustained plaintiff's motion un-
der Rule 52.13(d) to substitute new members of
the city council for those who did not return
after the 1991 city election. The original defen-
dants included: City of Kansas City, Kansas City
Municipal Assistance Corporation, Richard L.
Berkley, Chuck Weber, Sally Johnson, Frank
Palermo, Robert Hernandez, Joanne Collins,
Charles Hazley, Emanual Cleaver, Bob Lewel-
len, and John Sharp.

Wesley B. Jennings, Kansas City, pro se.

S. Preston Williams, Thomas E. Barzee, North Kansas City, for Kansas City Municipal Assistance Corp., defendant-respondent.

Richard N. Ward, City Atty., Heather Brown, Asst. City Atty., Kansas City, for Kansas City and other non-corporate defendants-respondents.

Before NUGENT, C.J., and ULRICH and BRECKENRIDGE, JJ.

NUGENT, Chief Judge.

Plaintiff Wesley B. Jennings appeals from the judgment of the circuit court entering summary judgment on all counts in favor of all defendants. We affirm.

In his first of four points on appeal, Mr. Jennings bifurcates his argument, contending first that the trial court's order did not constitute a declaratory judgment because it failed to include proper "findings of fact and conclusions of law" as required by law.

He next maintains that the trial court's order did not constitute a declaratory judgment because it failed to address each point in his petition as required by law. Mr. Jennings also bifurcates his second point on appeal, asserting that the trial court erred in failing to rule, first, that defendant City of Kansas City violated its charter and, second, that the plaintiff could estop the city from violating state law. In his third point, Mr. Jennings argues that the trial court erred in dismissing the Kansas City Municipal Assistance Corporation (KCMAC), a necessary party to his action, as a defendant from the declaratory judgment action. Finally, he contends that the trial court erred in denying him a second continuance because he needed the time to add additional necessary parties to his action.

In setting out the relevant facts, we rely in large part on the trial court's findings of fact. A complete statement of the facts requires brief references to the city's 1925 Charter, still in effect today, and several elections in the 1980's. Section 101 of the charter, requires that the city council submit to the voters for approval any proposal to issue general obligation bonds. Section 107 permits the city council to issue without voter approval bonds to pay court-imposed judgments and "bonds payable from the proceeds of special benefit assessments for public improvements," but prohibits those bonds increasing the city's general indebtedness.

In March, 1983, the city's voters imposed a one percent sales tax for five years, ending on December 31, 1988. In May, 1984, the city council created KCMAC, a not-for-profit corporation to serve as a "third party" that could facilitate the issuance of tax-exempt bonds and thus assist the city in funding projects. The corporation's bylaws called for a self-perpetuating board initially composed of seven directors that would always include the city's manager, attorney and financial officer, along with four members whom the city manager nominates and who may not serve as city officers or employees. The Internal Revenue Service granted the corporation tax-exempt status in August, 1985, under § 501(c)(3) of the Internal Revenue Code (I.R.C.).

In January, 1988, the city council adopted Resolution 62032, in which it pledged one half of the 1983 sales tax revenue to the city's public schools only until 1993 if the city's voters approved a reauthorization of the sales tax. The voters did so in March, approving Ordinance 61896, which provided that the city should continue the sales tax until December 31, 2000.

The city council, on November 22, 1989, approved Resolution 64698, which stated that because the city needed $114,000,000 to fund building projects, it would determine the feasibility of funding those projects through bonds issued by KCMAC. In addition, the city would service those bonds through revenues from one half of the one percent sales tax reapproved under Ordinance 61896, "after termination of support for public education as provided in" Resolution 62032.

The first phase of the financing plan conceived in Resolution 64698 involves the city's authorizing KCMAC to issue $45,-000,000 in bonds. The corporation will then pay the proceeds in a lump sum to the city and lease the properties marked for construction or renovation and carry out those projects.[2] KCMAC then will lease the completed properties back to the city, which pays the rent with general revenue. KCMAC will use the proceeds from the lease to make debt service payments on the bonds, and should it default, the bondholders have no recourse against the city. Moreover, if the city fails to appropriate annual funds to rent a property, its lease

---

2. In a sworn affidavit, the city's director of finance stated that KCMAC would pay the city the bond proceeds as "lump sum rental" for the properties and did not specify how the corporation would finance the work on the properties. At the summary judgment hearing, the city's counsel explained, without objection from the plaintiff, that KCMAC would use the proceeds to pay both the rent and the construction costs of the properties, and the trial court included that fact in its findings. In the textual paragraph above, we derive from the trial court's findings other facts that the plaintiff does not dispute.

terminates. In any event, KCMAC's lease-hold interest in the property terminates with the bonds' retirement. The minutes of a February 15, 1990, meeting of KCMAC's board reveal that the directors discussed the bond plan, resolved to implement it as provided in Resolution 64698 and to name four local and national brokerage firms as underwriters of the bonds.

On January 11, 1990, the plaintiff filed a petition in prohibition, asking the trial court to command the city council not to issue bonds under Ordinance 61896, and the court issued a preliminary order in prohibition. The defendants moved to dismiss, and Mr. Jennings filed an amended petition asking the court to declare that any ordinance drafted in compliance with Resolution 64698 would violate Missouri's constitutional and statutory law. He named as defendants the city, its mayor and members of the city council.

The defendants moved for summary judgment in March and in April the court granted the plaintiff's motion to amend his petition because he wanted to add two counts and KCMAC as an additional party. The defendants again moved for summary judgment, and on June 8 requested a hearing on their motions. The trial court overruled the plaintiff's motion for a continuance and convened the hearing on June 13. After reviewing exhibits as well as hearing arguments from and thoroughly questioning Mr. Jennings, counsel for KCMAC and counsel for the city, the trial court granted defendant KCMAC's motion to dismiss the plaintiff's claims against it for failure to state a claim. The court also entered an order granting the remaining defendants' motion for summary judgment. The plaintiff appealed.

■ We review a summary judgment as we would any court-tried or equity proceeding. If we can sustain the judgment under any theory, we must do so. *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.1984). If the trial court has reached a correct result for incorrect reasons, we still must affirm. *Labor Discount Center, Inc. v. State Bank & Trust*

*Co. of Wellston,* 526 S.W.2d 407, 429 (Mo. App.1975). We review the entire record in a light favorable to the party against whom the trial court entered judgment. *Fisher v. Scott & Fetzer Co.,* 664 S.W.2d 662, 663 (Mo.App.1984).

■ A trial court must exercise great care in utilizing summary judgment. *Gal v. Bishop,* 674 S.W.2d 680, 682 (Mo.App. 1984). It may enter a summary judgment where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the law entitles the moving party to a favorable judgment. *Ronollo v. Jacobs,* 775 S.W.2d 121, 125 (Mo.1989)[3]; *St. Charles County v. Dardenne Realty Co.,* 771 S.W.2d 828, 830 (Mo.1989); *Fisher, supra,* 664 S.W.2d at 663; Rule 74.04(c). To overcome the motion for summary judgment, the opposing party may not rest upon mere allegations or denials, but must set forth specific facts that demonstrate the existence of an outstanding genuine issue of material fact. *St. Charles County, supra.* Facts of such probative value as would control or determine the litigation constitute "material facts." *Schneider v. Forsythe Group, Inc.,* 782 S.W.2d 139, 142 (Mo.App.1989). Mere doubt and speculation do not create a genuine issue of material fact. *St. Charles County, supra.* Rather, the evidence must demonstrate a factual question that would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ Thus, the Court in *Anderson, supra,* could state the threshold inquiry as whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. The Court further held that the standard for decision of a motion for summary judgment mirrors the standard for a directed verdict under the Federal Rules of Civil Procedure. *Id.* These twin standards also

---

**3.** Since October 28, 1982, the Missouri Supreme Court has heard all cases sitting en banc.

prevail in Missouri, where a trial court may direct a verdict only when "no reasonable and honest persons could differ on a correct disposition of the case." *Jarrell v. Fort Worth Steel & Mfg. Co.,* 666 S.W.2d 828, 833 (Mo.App.1984).[4]

In *Anderson, supra,* the Court explained that "the substantive law will identify which facts are material," and this identification governs the summary judgment decision. 477 U.S. at 248, 106 S.Ct. at 2510. The Court explained that, whereas the materiality determination rests on the substantive law, materiality serves only as a criterion for categorizing factual disputes in their relation to the legal elements of the claim, not as a criterion for evaluating the evidentiary underpinnings of those disputes. *Id.*

The Court continued, however, that in determining whether a given factual dispute requires submission to a jury, a trial court must follow the substantive evidentiary requirements that apply to the case and view the evidence presented through the prism of the substantive evidentiary burden that would serve as a benchmark for a trier of fact evaluating the same evidence. *Id.* at 254–55. Further, in addressing summary judgment or directed verdict motions, the trial court must believe the evidence and all its reasonable derivative inferences presented by the party against whom summary judgment would lie. *Id.* at 255.

The test of summary judgment set out in Rule 74.04(c) and employed in *Ronollo* and *St. Charles County,* supra, establishes Missouri's standard for deciding motions of summary judgment. It reflects the Court's holdings in *Anderson* and in cases extending back to the last century, *see Improvement Co. v. Munson,* 14 Wall 442, 448, 20 L.Ed. 867 (1872), that have made summary judgment a more common and less drastic remedy by requiring the existence of a genuine issue of material fact, rather than the slightest doubt resting on a scintilla of evidence, to take a case to the jury. This commonsense approach not only relieves trial courts of the added burden of baseless cases, but saves litigants time, money and frustration.

In the first part of his first point on appeal, Mr. Jennings argues that the trial court erred in using as findings of fact and conclusions of law in its summary judgment order the proposed findings of fact and conclusions of law suggested by defendants in their summary judgment motion. He contends that the trial court's order failed to conform to the required standards pertaining to findings of fact and conclusions of law.

Normally, in reviewing a summary judgment, we would not need to address a question of declaratory judgment because, assuming the existence of legal grounds for summary judgment, if no question of material fact remains, then a court need declare nothing more than that. Here, however, we address a cause of action that concerns important financing programs not only in Kansas City but throughout the state. Therefore, we address in detail each point raised by the plaintiff. In addition, the trial court's judgment declared the rights of the parties even as it summarily disposed of the issues before it.

The plaintiff relies on *Smith v. Pettis County,* 345 Mo. 839, 136 S.W.2d 282, 285 (Mo.1940), to assert the hoary and undisputed principle that a trial court's decision in a declaratory judgment action must declare the rights of the parties. He also quotes from *Nigro v. Ashley,* 690 S.W.2d 410 (Mo.App.1984), at 417, maintaining that " 'the trial court must make a declaration of the rights of the parties that disposes of all questions concerning the status or legal relations encountered in adjudicating the controversy.' "

4. The same standard applies where a trial court has entered a judgment on the pleadings. In *Bakewell v. Mo. State Employees' Ret. Sys.,* 668 S.W.2d 224 (Mo.App.1984), we found that a defendant's motion for summary judgment, unsupported by evidentiary material, became in effect a motion for judgment on the pleadings, similar to a motion to dismiss. We held that the trial court could grant that motion "only if the facts pleaded by the petitioners, together with the benefit of all reasonable inferences drawn therefrom," showed that they could not prevail under any legal theory. *Id.* at 228.

Defendants [5] do not dispute those principles. Rather, they correctly assert that the trial court did declare the rights of the parties in a way that disposed of all questions concerning the status or legal relations encountered in adjudicating this controversy, and Mr. Jennings fails to disprove that assertion.

Section 527.010 [6] permits trial courts to enter declaratory judgments. In reviewing a petition for declaratory judgment, we accept as true all of the well-pleaded facts and their concomitant reasonable inferences, ignoring all conclusions. The test for sufficiency of a petition for declaratory judgment hinges on whether the parties show entitlement to a declaration of rights or status on the pleaded facts. *Harris v. State Bank and Trust Co. of Wellston*, 484 S.W.2d 177, 178 (Mo. 1972). If the facts demonstrate any justiciable controversy, the trial court should declare the rights of the parties. *Dudley v. Shaver*, 770 S.W.2d 712, 714 (Mo.App. 1989). Because the legislature intended § 527.010 as a remedial law affording relief from uncertainty, courts must interpret it liberally. *Dudley, supra;* § 527.120.

A court certainly must interpret Mr. Jennings' petition liberally, because in no place except the title does he indicate that he seeks a declaration of his rights. Instead, in his first count he requests the trial court to enjoin defendants city and city council from violating § 107 of the city charter and the state's City Sales Tax Act, §§ 94.500, 94.510, by their authorization of KCMAC to issue the bonds proposed in Resolution 64698. Next he petitions the court to require the city to allocate one half of the sales tax revenue collected under Ordinance 61896. Finally, he seeks to prohibit the city from appropriating money to pay off any indebtedness incurred by KCMAC

through its issuance of bonds. Believing, however, that the trial court, indirectly at least, would declare the rights of the parties to this action by ruling on the plaintiff's petition, we exercise liberality and read his second amended petition as a petition seeking declaratory judgment. *Dudley, supra;* § 527.120, *supra.*

The trial court's order declared that defendants city and city council had not violated § 94.510 [7] because, first, KCMAC existed as a separate entity capable of issuing bonds that in no way obligated the city, and because, second, through Resolution 62032 the city had advised the electorate before the March 1988 election implementing Ordinance 61896 that it would cease its voluntary funding of the public schools after 1993. In addition, the court declared that the city had not violated Art. VI, § 26(a) of the Missouri Constitution, which among other things prohibits a city from indebting itself "in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution."

Further, the trial court declared that the city had no obligation to contribute revenues to public school districts within its limits. It also declared that any "moral obligation" that the city had to make those contributions ended when "the voters approved the sales tax in March of 1988, after the Council stated its intention in January 1988 to continue the contributions for only five more years."

Finally, the trial court declared that § 1(8) of the charter "explicitly authorizes" the lease agreement between the city and KCMAC, under which KCMAC would use the city's rental payments to repay its bond obligations.[8] In addition, the court de-

---

5. Defendant KCMAC addresses in its brief only the plaintiff's third point on appeal, involving the trial court's dismissal of the corporation as a party, because only that point involves KCMAC.

6. Unless otherwise indicated, all sectional citations refer to Missouri Revised Statutes, 1986.

7. § 94.510 permits city councils to impose a sales tax only after the council has submitted the proposed tax to the city's voters.

8. We have no doubt that the city had ample authority in any event to rent property from third persons. *Aull v. City of Lexington*, 18 Mo. 401, 403 (Mo.1853); *Christy's Adm'r v. The City of St. Louis*, 20 Mo. 143, 145 (Mo.1854).

clared that § 432.070 [9] does not prohibit the city from contracting with KCMAC.

Thus, under the decisions upon which the plaintiff relies, the trial court entered a proper and complete declaratory judgment disposing of the issues raised by the pleadings. *See Zaiser v. Miller*, 656 S.W.2d 312, 315 (Mo.App.1983). Unlike *Zaiser*, for example, where the trial court's judgment consisted of one short paragraph that merely set out the amount and extent of damages with no reference to the legal rights or status of the parties, *id.* at 314, the judgment here, while not using the word "declaration," consists of three pages of detailed conclusions declaring the parties' rights and status.

In the second part of his first point on appeal, the plaintiff complains that the trial court erred in accepting as its findings of fact and conclusions of law the order submitted by defendants city and city council. Mr. Jennings argues that the court's judgment failed to address the issue, raised in his second amended petition, of the legal relationship between the city and defendant KCMAC, which we take to refer to the issue of agency.

In conclusion number six of its order, the trial court unequivocally ruled that the city could enter into contracts with KCMAC. In number seven, the court ruled that neither § 107 of the city charter, pertaining to bonds issued by a city council, nor the debt limitation provisions of the Missouri Constitution, apply to KCMAC. In number eight, the court ruled that "none of the city's actions commit sales tax revenues to completing the KCMAC projects."

Although the order did not detail the legal relationship between KCMAC and the city, it declared the status of that relationship as it related to the issues raised in the plaintiff's second amended petition. Thus, the plaintiff's argument fails.

In the first part of his second point on appeal, the plaintiff contends that the trial court erred in entering summary judgment in favor of defendants city and city council. He obliquely argues that the trial court should have concluded that in granting KCMAC the authority to issue bonds, the city and its council violated § 107 of the city charter, which prohibits the city from issuing bonds except in two situations, neither of which apply to this cause of action. In his obloquy, he accuses the city council of "lacking the intestinal fortitude and gumption" in 1984 to amend § 107 to permit the city to issue general revenue bonds without voter approval. Instead, he argues, the council circumvented the prohibition by forming KCMAC to facilitate long term-funding of the city's acquisition of land and equipment. He reasons that KCMAC serves as the agent of the city, and that the council, as principal, "cannot authorize an agent, in this case respondent KCMAC, to do something that the principal cannot due [sic]." Therefore, he concludes, the city has violated § 432.070 by issuing bonds without voter approval.

Counts one and three of the petition deal with the relationship between the city and KCMAC and the validity of KCMAC bonds. Count two challenges the city's funding of schools. We first address the trial court's entry of summary judgment on counts one and three. The linchpin of Mr. Jennings' argument regarding the issuing of bonds by KCMAC involves the alleged agency relationship between that corporation and the city.

Mr. Jennings cites a single case that involves a completely inapposite fact situation, *Miner v. N.Y.S. Dept. of Correctional Ser.*, 125 Misc.2d 594, 479 N.Y.S.2d 703 (Sup.1984), *aff'd*, 125 A.D.2d 573, 509 N.Y.S.2d 778 (1986).[10] There, the court merely stated the accepted rule that a principal lacking the power to enter into a legal relationship may not authorize an agent to

**9.** In pertinent part, § 432.070 states that no "municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law...."

**10.** In *Miner*, the Duchess County Supreme Court ruled that New York statutory law prohibiting an inmate serving a life sentence from marrying rendered invalid the proxy marriage, legally officiated in Kansas, between a Kansas woman and a New York inmate serving a life sentence.

enter into that relationship. *Id.,* 479 N.Y.S.2d at 704.

Further, the plaintiff proffered pertinent excerpts from the city charter; pertinent statutes, both state and federal; city ordinances and city council resolutions; and KCMAC's bylaws, as well as excerpts from the minutes of board meetings. In one excerpt from a meeting on October 8, 1987, the City Manager, a director, points out that because the corporation needed to fund specific projects requested by the city council, the council needed to "provide the funding sources to pay the debt service. He stated that the cumulative total of bonds issued would be limited by the funds available to pay the debt service."

In support of their motion, defendants city and city council presented, among documentary evidence that included KCMAC's articles of incorporation, the sworn affidavits of the City Attorney and of Glenn E. Deck, the city's Director of Finance. Mr. Deck averred that: the city anticipated that KCMAC would consent to issue $45,000,000.00 in bonds to fund the first phase of a series of improvement projects; the corporation would transfer the bond proceeds to the city as a lump sum rental for the project properties, would carry out the projects, and would lease the properties back to the city; the leaseback agreement would terminate if the city did not appropriate funds to pay the lease; the city would obtain a legal opinion attesting to the legality "of all related transactions and documents;" nothing obligated the city to pay principal or interest on the KCMAC bonds; no recourse against the city existed should the corporation default on its bonds.

▆▆▆ Rule 74[11] permits a trial court entertaining a motion for summary judgment to accept affidavits from the parties. *St. Charles County v. Dardenne Realty, Co., supra,* 771 S.W.2d at 830; *Brown v. Upjohn Co.,* 655 S.W.2d 758, 759 (Mo.App. 1983). Affidavits constitute evidentiary material, *Brown, supra,* by which, for example, the moving party demonstrates en-

titlement to a summary judgment. *Id.* An affidavit functions to state facts, not conclusions. *Bakewell, supra,* 668 S.W.2d at 227. An affidavit "must be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." *St. Charles County, supra.* An affidavit failing to aver specific facts and relying on mere doubt and speculation fails to raise any issue of material fact. *Id.* A party trying to overcome a motion for summary judgment "may not rest upon mere allegations or denials" in pleadings or in arguments at a hearing, but, "by affidavits or otherwise", must "set forth specific facts showing a genuine issue for trial." *American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 338–39 (Mo.App.1987).

Consequently, the trial court had to ignore the conclusions drawn by Mr. Deck that the city bears no obligation to repay KCMAC bonds and that bondholders, in the case of KCMAC's default, would have no recourse against the city. It also had to ignore the similar conclusions drawn in the defendants' pleadings and arguments at the hearing, as well as the contrary conclusions that Mr. Jennings drew.

Instead, it only could consider the facts that the parties proffered, and we must do the same. The trial court concluded that the city could utilize a not-for-profit corporation like KCMAC but that no agency relationship existed between the corporation and the city.

▆▆▆ When, as here, a trial court faces no conflict of evidence, the determination of an agency relationship involves a question of law for the trial court. *Tri–City Constr. Co. v. Kirkwood and Assoc.,* 738 S.W.2d 925, 931 (Mo.App.1987). *See also Eyberg v. Shah,* 773 S.W.2d 887, 890 (Mo. App.1989). In *Tri–City, supra,* we defined agency as "a fiduciary relationship which results from the consent by one person, the principal, to another, the agent, for the agent to act on the principal's behalf and subject to the principal's control." *Id.*

---

**11.** All citations to rules refer to Missouri Rules of Court, 1991.

The distinguishable relationship of an independent contractor involves one who contracts with another to perform a service but who remains outside the other's control and retains the physical freedom to perform the service outside the other's control. *Id.* One contracting to act on another's behalf and under the other's control, but who maintains control over his own physical conduct, serves as both agent and contractor. *Id.* Further, an independent contractor who assumes a fiduciary obligation to the contracting party becomes that party's agent. *Id.*, citing Restatement (Second) of Agency, §§ 1, 2 and 4 (1957).

A party alleging an agency relationship bears the burden of proving that relationship. *Eyberg, supra,* at 890. Facts and circumstances alone, as well as direct evidence, can prove agency. *Id.* Ordinarily, the trier of fact's mere disbelief of the evidence adduced by the party having the burden of proof suffices to support an adverse finding on the agency issue even if the opposing party has adduced nothing. *Id.* at 893.

We find the strongest evidence of an agency relationship in a fact that the plaintiff raised for the first time in his appellate reply brief. On page 3 of the "narrative" attached to the KCMAC application to the Internal Revenue Service for tax exempt status under I.R.C. § 501(c)(3), submitted as an exhibit by the plaintiff. The applicant states that "the Corporation serves as an agent or instrumentality of the City to aid the latter in conducting its governmental activities." The application form remains unsigned, although it lists the applicant as Kansas City Municipal Assistance Corporation, and the attached "narrative," detailing KCMAC's activities, notes at the top of each page the corporation's name, address and the phrase "Form 1023 IRC § 501(c)(3) Exemption Application." Mr. Jennings attested to the document's validity, which the defendants do not contest, and the trial court accepted the exhibit as true. We see no reason to deem it anything but valid.

In his motion and suggestions in opposition to the motion for summary judgment, Mr. Jennings quotes extensively from the application. But he never cited KCMAC's annointment of itself as the city's agent in his petitions in the trial court. Had he done so, that alone conceivably could have raised a genuine issue of material fact that would have compelled the trial court to deny the defendant's motion for summary judgment on that issue. We need not decide that unraised question.

In any event, we will not reverse the trial court's judgment because of this discovery after our own painstaking research of the 143 exhibits submitted by Mr. Jennings. To do so would set a precedent that would permit a party to dump voluminous exhibits in the lap of an already overburdened trial judge, expecting the judge to sift through the morass to discover information supportive of the party's arguments and then claim error when the trial judge failed to find the needle in the haystack. A trial judge should not take on a job that traditionally and reasonably belongs to counsel. Although the plaintiff did bring KCMAC's admission to our knowledge in his reply brief, we cannot decide this case based upon the information he gives us; we may decide only on the basis of that which he presented to the trial court. Moreover, an alleged agent's out of court declarations establishes neither the fact nor the scope of agency. *Rosser v. Standard Milling Co.,* 312 S.W.2d 106, 110 (Mo.1958).

Mr. Jennings' other arguments rest on evidence that does not overcome the defendants' evidence supporting summary judgment. He has demonstrated that the city's leaders hoped to fulfill the bond obligations of KCMAC to ensure the completion of various reconstruction projects. He has shown that the city has very close ties with KCMAC. His evidence unequivocally proves one prong of the agency test, namely, that KCMAC works on behalf of, and solely for the benefit of, the city.

He has, however, failed to prove that the city controls KCMAC, the test's second prong. Mr. Deck's affidavit states that the city's lease payments to KCMAC depend upon the city council's annual allocation of

funds for that purpose. If the council does not allocate the funds, the city cannot pay and the lease terminates.

In addition, a letter of September 11, 1987, from one of the bond underwriters to an officer with the Market Area Redevelopment Corporation, refers to a leaseback agreement between the city and KCMAC "subject to annual appropriation" by the city government. A KCMAC resolution of the same date also states that the leaseback agreement hinges in part on the city council's annual appropriation.

This evidence conflicts with a view of the corporation as a mere puppet, or "alter ego," as Mr. Jennings calls it, of the city. If the city does not pay the rent, it loses rights to the properties leased. At most, the plaintiff has proved that KCMAC acts as an independent contractor, operating on behalf of the city, beginning a project at the city's direction, but maintaining the independence to operate in its own way.

In addition, the city does not assume indebtedness exceeding one year and thus does not even indirectly violate Art. VI, § 26(a) of the state's constitution, prohibiting a municipality from incurring such indebtedness without the voters' approval. Therefore, the city has not exceeded its powers in violation of § 432.070.

This court's Eastern District addressed a similar fact situation in *St. Charles City–County Library Dist. v. St. Charles Library Bldg. Corp.*, 627 S.W.2d 64 (Mo.App. 1981), and reached a similar decision. There, a library building corporation emerged with the "sole stated purpose being to aid the [library] District in the erection of free library buildings," and received tax-exempt status from the Internal Revenue Service. *Id.* at 65. Under the leaseback agreement, the library district conveyed land to the corporation, which used the land to secure building loans and then leased the land and the finished buildings back to the district. The one-year lease included twenty-four successive options to renew for one year and an option for the district to buy the building after twenty-four years for one hundred dollars. *Id.* In reviewing a declaratory judgment action,

the court affirmed the trial court's conclusion that the district had not violated Art. VI, § 26(a) of the state constitution, holding that since the district could terminate lease agreement after one year, it had indebted itself for only a one year period. *Id.* at 68.

In his reply brief the plaintiff correctly argues that IRC § 103(a) exempts from taxable income the "interest on any State or local bond." He further asserts that § 103(a) does not state "that gross income does not include interest on any bond issued by an organization exempt from tax under Section 501(c)(3)." He fails to add, however, that subsection (c)(3) qualifies the exemption by stating "[e]xcept as provided in subsection (b)," which states that no exemption applies to a "[p]rivate activity bond which is not a qualified bond." Under the subchapter entitled "Tax Exempt Bonds," the code's § 145(a)(1) defines a " 'qualified 501(c)(3) bond' " as one in which the § 501(c)(3) corporation will own all property derived from the proceeds of the corporation's bond issue.

Under *Anderson, supra,* 477 U.S. at 254–55, 106 S.Ct. at 2513–14, Mr. Jennings' burden of proof constituted a preponderance of the evidence, the standard of proof in civil cases. *Highfill v. Brown,* 320 S.W.2d 493, 497 (Mo.1959). By this standard, he has failed to present specific facts that demonstrate a genuine issue of material fact. *St. Charles County, supra,* 771 S.W.2d at 830.

■ In the second part of his second point on appeal, the plaintiff argues that the trial court erred in refusing to estop the city from implementing Resolution 62032, which calls for the end of city funding to public schools after 1993. He contends that the city failed to inform the voters in the March 1988 election that if they approved Ordinance 61896, continuing the sales tax approved in 1983, it would cease using the tax proceeds to fund schools after 1993. He maintains that estoppel can apply to a municipal corporation when failure to apply it would work an injustice.

The doctrine of equitable estoppel, usually not invocable against governmental entities, has, nevertheless, applied against such entities in exceptional cases when required by right and justice. *Kennedy v. City of St. Louis,* 749 S.W.2d 427, 433 (Mo.App. 1988). Basically, estoppel forecloses a person from denying an expressed or implied admission upon which another has relied. It serves as a shield to protect the claimant from an otherwise inescapable loss. *Miskimen v. Kansas City Star Co.,* 684 S.W.2d 394, 400 (Mo.App.1984), *citing Peerless Supply Co. v. Indus. Plumbing & Heating Co.,* 460 S.W.2d 651, 665–66 (Mo.1970).

The trial court did not err in failing to find that the city's implementation of Resolution 62032 would work an injustice. First, accepting as true Mr. Jennings' assertion that the voters have " 'continued' their support of the public schools with funds received from a ½ per cent sales tax levy" since 1974, nevertheless, that support consisted of no more than a voluntary contribution by the city, not a legally binding obligation.

Second, the city council passed Resolution 62032 two months before the voters approved Ordinance 61896. He has not shown that the city council passed the resolution in a closed session, held under § 610.025, which permits governmental bodies to meet in closed session under certain circumstances. Thus, we must assume that the council met in open session, under § 610.015, which mandates open meetings of governmental bodies, except under the exceptions provided in § 610.025, and that interested persons could attend. Further, Mr. Jennings has not shown that the resolution did not become a matter of public record after its passage, and thus, that the public could not have learned of its contents.

The trial court correctly refused to invoke estoppel because no injustice had occurred. No conflict of intent appears between the ordinance and the resolution. The resolution clearly indicated the council's planned use of the tax proceeds. The plaintiff has not demonstrated that interested voters did not have the opportunity to learn of that intention before they voted.

In his third point on appeal, Mr. Jennings contends that the trial court erred in dismissing his claim against KCMAC for his failure to state a claim upon which the court could grant relief. He argues that KCMAC, as the agent of the city, constituted a necessary party to his action.

A justiciable controversy exists only between parties with interests adverse in fact. *County Court of Washington County v. Murphy,* 658 S.W.2d 14, 16 (Mo. 1983), *citing State ex rel. Chilcutt v. Thatch,* 359 Mo. 122, 221 S.W.2d 172, 176 (Mo.1949) (en banc). A plaintiff must show that defendant has threatened the plaintiff's rights and the right to specific relief. *Id.*

On the same day that the trial court issued its findings of fact and conclusions of law, it dismissed the plaintiff's claims against KCMAC. Its dismissal, therefore, rested upon a finding that KCMAC did not serve as an agent of the city and, therefore, it did not illegally issue bonds. Mere displeasure with an action of a corporation in issuing bonds does not create a cause of action. The trial court's findings of fact and conclusions of law show that KCMAC had not injured Mr. Jennings. Accordingly, he could bring no action against the corporation.

In his fourth and final point, the plaintiff argues that the trial court erred in denying his motion for a continuance of the summary judgment hearing. He contends that he learned of additional defendants only shortly before the scheduled hearing and, therefore, needed additional time to discover their number and names.

The granting of any continuance rests largely within the discretion of the trial court. *Collins v. Dir. of Revenue,* 691 S.W.2d 246, 254 (Mo.1985). Appellate courts must give the trial court's decision every possible intendment and will set it aside only on a showing of abuse by arbitrary or capricious exercise of that discretion. *Holt v. Best,* 750 S.W.2d 705, 707 (Mo.App.1988).

Discretion means the option that the trial judge has in doing or not doing that which a litigant does not have the absolute right to demand. *Anderson v.*

**736**

*Robertson,* 402 S.W.2d 589, 592–593 (Mo. App.1966). Abuse of that discretion means an untenable judicial act that defies reason and works an injustice. *State v. Williams,* 643 S.W.2d 3, 4 (Mo.App.1982), *citing State v. Stubenrouch,* 499 S.W.2d 824, 826 (Mo. App.1973). When the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable, the appellate court will find an abuse of discretion. *State v. Marks,* 721 S.W.2d 51, 55 (Mo.App.1986), *citing Mathews v. Chrysler Realty Corp.,* 627 S.W.2d 314, 318 (Mo.App.1982). Once the appellate court has found that the trial court had alternative choices that would not yield a result contrary to the law, however, the review ends and the appellate court will affirm any of those choices. *In re George,* 630 S.W.2d 614, 622 (Mo.App. 1982). These principles apply in both civil and criminal cases. *See Marks, supra; Williams, supra; Anderson, supra. Cf. Consolidated School District Number 2 v. King,* 786 S.W.2d 217, 218 (Mo.App.1990).

At the hearing on the defendants' motion for summary judgment, Mr. Jennings told the trial court that he knew of other organizations issuing similar bonds and that he wanted to join them as defendants.

The trial court did not act arbitrarily or capriciously in denying the plaintiff's motion for a continuance. The plaintiff failed first to show any injury that those additional organizations may have caused. Moreover, based upon the information before it, the trial court could evaluate the general validity of Mr. Jennings' proposed claims against the additional defendants. Thus, the court's denial of his motion did not prejudice the plaintiff, based upon the evidence in the record as a whole, which we have just reviewed. In no way did the trial court's ruling amount to an abuse of its discretion.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.